The People
v.
Vermilyea.

*THE PEOPLE *against* VERMILYEA, BROWN, SPENCER, DAVIS, AND BARKER.

A challenge of a juror for princicipal cause, becomes part of the record; and may be reviewed on error.

A challenge because the juror has expressed an opinion, is a challenge for principal cause, and need not be accompanied with personal ill will to render it valid.

Where such a challenge is made and decided upon by the court, who pronounce it insufficient; that is equivalent to a decision on demurrer and joinder; and should be so entered by the clerk on the record.

If it be not entered in that form; yet, on certiorari, if the particular facts appear upon the return, the court will treat it as a decision on a regular issue in law, and set it aside as erroneous.

The juror himself may be questioned on oath touching his opinion.

A motion by a defendant in a criminal cause removed by certiorari to, and pending in the supreme court, should be preceded by notice to the district attorney.

Whether an indictment for a misdemeanor, so removed, can be remitted to the court below? *Quere.*

But if it can, the court have a discretion to retain it; and will do so, especially where it appears probable that grave questions of law will arise on the trial.

And in such case, they will ordinarily send the cause down to the circuit of the county where the venue is laid.

The venue is never changed in a criminal cause. But when it appears that an impartial trial cannot be had in the county where the offence is laid, the court will order a suggestion of this fact to be entered on the record; and a venire is then awarded to the sheriff of another county.

But, to warrant such a suggestion, the case must be a clear one upon the fact.

The expression of a belief, that a fair and impartial trial cannot be had, in an affidavit, goes for nothing, unless it be warranted by the facts particularly proved.

On certiorari, the court will not notice facts improperly returned; *e. g.* the evidence returned by a court of oyer and terminer.

Nor will they instruct the circuit judge, on motion, upon any surmised state of facts.

*Semb.* that where several defendants, entirely disconnected in the transactions through which they are sought to be convicted, are jointly indicted, it would be a sound exercise of discretion to grant them separate trials.

But where the right of peremptory challenge is out of question, it is in the discretion of the court to allow a separate trial or not.

*Semb.* however, that this is a legal discretion; and should a separate trial be improperly denied by a circuit judge, the supreme court would, on motion, order a new trial.

NEW YORK,    The statute giving a bill of exceptions, does not extend to criminal cases,
May, 1827.    and hence the evidence given in an inferior criminal court, cannot be re-
The People    viewed by writ of error or certiorari.
v.          But where a criminal cause goes down to the circuit, the proceedings at the
Vermilyea.       trial may be reviewed, on motion, the same as in a civil cause; and the
                evidence be brought up on a case.
             The circuit court may grant an attachment, and bring a witness before them
                to testify after he has disobeyed a subpœna.
             The district attorney may remove a criminal cause to the supreme court, by
                certiorari, as a matter of course, and of right.
             Form of a recognizanee for the appearance of a defendant, who has removed
                a criminal cause by certiorari, for error in his conviction; and upon which
                the supreme court ordered him to be tried at the circuit.
             Sureties for the defendant's appearance to answer an indictment, &c., must
                justify, if this be requird by the district attorney.
             Where the defendant has pleaded to an indictment in an inferior court, which
                is tried; but on certiorari to this court, a new trial is ordered, he need not,
                in strictness, plead _de novo_, for the old plea stands.
             Yet he may plead _de novo_ by consent.
             Where several defendants are jointly indicted; but the indictment is removed
                by certiorari at the suit of a part of the defendants; whereupon, the whole
                cause is retained for trial on the civil side; if the other defendants will
                not voluntarily come in and be recognized, &c., they may be brought in
                on a _capias_.
             Where a criminal cause is tried at the circuit, judgment is rendered by the
                bench; and if there be a conviction, _semble_, that the circumstance in evi-
                dence must be laid before them by a case, or in some other way, to enable
                them to estimate the measure of punishment.    .

THIS cause came before the court on a return to the cer-
tiorari granted by WOODWORTH, J., upon grounds mentioned
6 Cowen., 555, S. C.; and was discussed upon the points
there decided by him, as to the nature and effect of the
challenge against Norwood, the juror; and the proceedings
upon it in the court below. The case will be found stated
there, (p. 556, 7,) substantially, as it was now presented by
the return.

T. J. Oakley, for Spencer & Brown. B. F. Butler, for
Vermilyea & Barker. The judge who granted the cer-
tiorari in this case, rightly held that he would consider the
challenge as demurred to, and overruled upon a regular
issue in law. This was merely saying that he would disre-
gard the form of the proceeding, and look to the substance.

But whether his honor was right or wrong, the court will
not now inquire. The whole matter is spread upon the re-
turn; and should be examined upon its merits. If there
*be any doubt whether Norwood was examinable touching
the ground of challenge, it is enough that all objection was
waived. He was examined by consent.

The only question then, is, whether a man, having formed
and expressed an opinion on the matter in controversy, be,
in judgment of law, an impartial juror. It will be conceded
that every man accused, has a right to an impartial jury.
So important was this right esteemed, that its declaration
was made a condition of adopting the constitution of the
United States; and afterwards formed the subject of an
amendatory article. Nothing could show more clearly the
universal sense of the people.

The question recurs, what is impartiality? On the other
side, it is said to be impartiality of feeling merely. We
say that not only this is secured, but also impartiality of
judgment. The distinction is plain between challenges for
principal cause, and to the favor. The former is for what,
in judgment of law, will disqualify a juror. The latter is
any thing else which operates to render him partial. Un-
der the latter head, the books give no detail; because, from
the nature of the case, none can be given. The cases de-
cided in this state, are *Wood* v. *Stoddard*, (2 John. 194;)
*Blake* v. *Millspaugh*, (1 id. 316;) *Durell* v. *Mosher*, (8 id.
445;) and *Pringle* v. *Huse*, (1 Cowen, 432.) In *Durell* v.
*Mosher*, the challenge was disallowed on the ground that
this opinion was hypothetical, and founded on mere neigh-
borhood report. The juror had formed no opinion upon
any fact. The case may be supported upon the distinction
which prevails between civil and criminal prosecutions.
In the former, the jury decide the fact merely; in the lat-
ter, both the law and the fact. In the case cited, the juror
had decided only the law; and even if the facts had turned
out to be the same as reported, he would have been bound,
under the decision of the judge, to change his opinion of
the law. In *Blake* v. *Millspaugh*, this court decided that
the expression of an opinion is a cause of challenge; and

NEW YORK,
May, 1827.
The People
v.
Vermilyea.

in *Pringle* v. *Huse*, they say it is a principal cause. In the reporter's note to that case, (1 Cowen, 438,) the having expressed an opinion is ranged * under the head of principal causes, and further authorities are cited. *Coleman* v. *Hagerman*, (M. S. cited by Mr. Justice Woodworth, 6 Cowen, 564,) Judge Chase's trial, app. 4, 19, Fries' trial, 177, app. 42, and Merchant and Curtis' case, lately tried in Massachusetts before judge Story, will be found to support the same doctrine. The trial of Col. Burr, before Ch. J. Marshall, vol. I. pp. 43, 46, 370, 371, is also strong to the point.

An examination of the cases cited will show that the principle for which we contend is established in this country. And whatever may be the ancient or modern English practice, this court must be bound by the decisions of their own, and of other high American tribunals. These decisions accord with the universal practice of our courts. It is the uniform course, for instance, to set aside grand jurors who found the indictment. This is founded on principle ; and we never supposed till lately, that there was a statute (25 Ed. 3. ch. 3,) declaring this to be the law. Hawkins, however, in his pleas of the crown, (Vol. 2, ch. 43, s. 27,) says this was in affirmance of the common law. No doubt it is a principal cause of challenge ; for they cannot be indifferent if they did their duty as grand jurors. (*Commonwealth* v. *Hussey*, 13 Mass. Rep. 221.) The case cited went upon the common law ; holding upon a motion for a new trial, that the jurors were incompetent as having sat on the grand jury. It is also the established practice, that one of a jury, who on a former trial had disagreed, shall be set a side upon a second trial.

As to the English rule, the leading case relied on against us, is *The King* v. *Edmonds*, (4 B. & A. 471.) The language of the court, in that case, (id. p. 490, &c.) is, that the opinion expressed by the juror must be accompanied with ill will. This decision, however, was since our revolution. Besides, it was extrajudicial ; and, therefore, would be fully open to examination even in the court which pronounced it. The opinion commences at p. 472 ; and will

be found to depend on the rule, that the challenge was premature, as coming before a full jury had appeared. Abbott, Ch. J, who delivered the opinion, speaks *of this in the outset as an established rule ; and it certainly disposed of the case, without going into the merits of the challenge. Another answer was, that the juror could not be inquired of whether he had expressed the opinion. No other proof was offered. This too is an established rule, in the English courts ; and was another sufficient reason for denying the motion. (id. p. 490.) After these conclusive arguments, he proceeds gratuitously to consider the point raised here. The whole case was disposed of before he reached this ground.

As to the opinion itself, his lordship admits, when speaking of the form of the question in proving the challenge, that a *preconceived opinion* is enough to disqualify a juror. But he immediately after abandons that ground ; and adds ill will to the party, upon the authority of 2 Hawk. ch. 43, s. 28. In this he mistakes the language of that writer. Hawkins, at the place in question, merely cites the authorities ; and winds up, in section 33, by saying that these matters seem to be unsettled ; evidently referring to the matter in question as among the unsettled doctrines. He gives no opinion. He refers to 7 H. 7, 25, (*a*) as holding ill will to be a necessary ingredient. But in the same section, and almost in the same sentence, he mentions a subsequent decision, (21 H. 7, 29,) that a declaration of opinion is, *per se*, a disqualifying circumstance. Thus, the question is at least balanced. Indeed, we may say the last case overrules the former. Another adjudication mentioned by Hawkins in the same chapter, section 29, is certainly contrary to our practice. It is, that a juror who has found one guilty on an indictment, may try another on the same indictment. The 1 Chit. C. L. 542, and the authorities there cited, which will also be relied on, are based upon Hawkins, and of course are subject to the same criticism.

(*a*) This is a misquotation in Hawkins. It should be, 7 H. 6, 25.

*Right margin:* NEW YORK, May, 1827. The People v. Vermilyea.

By looking into the 2 Harg. St. Trials, 302, the intro. ductory remarks to the trial of the Regicides, and Kelyng, 9, we may be better enabled to appreciate some of the rules of challenge which have crept into the old books. *The rule, that a juror who has pronounced one defendant guilty may try another on the same indictment, was ustablished, and appears to have owed its origin to a secret *ex parte* consultation between the judges and counsel for the crown, convened for the purpose of settling the preliminaries of the trials for the murder of Charles the first. The rule mentioned is contained in their 7th resolution; and is cited as law by the English writers, and acted upon by English judges, on such authority. (See *Cranburne's case,* 4 Harg. St. Tr. 704, and *Cook's case,* id. 738, 8 W. 3.) Indeed, we had often thought, that we ought not to look back beyond the period of the English revolution for precedents of practice in criminal law, any farther than they comport with reason. But in *Cook's case,* (4 Harg. St. Tr. 747,) the force of the doctrine for which we contend overcame whatever prece: dent there was against it; and Ld. Ch. J. Treby and the other judges adopted the rule there contended for by the prisoner: that if any of the jury had said he was guilty, or they would find him guilty, or he should suffer, or be hanged, or the like, they were not fit or proper men to be of the jury.

For the cases and authorities on the English rule, we refer the court, generally, to Bac. Abr. Juries, (E.); 21 H. 7, 29, pl. 10; id. 33, pl. 21; 49 Ed. 3, 1, pl. 2; Co. Lit. 155, a.; 2 Tidd, 779, 80; Bull. N. P. 307; 1 Archb. Pr. 181, 2; 21 Vin. Abr. Trial, (1. d.;) id. p. 265, (G. d.) pl. 7; 2 Swift's System, 232; 3 Bl. Com. 363; 2 Hal. Hist. C. L. 37.

Most of these books concur in declaring the simple expression of an opinion to be, not only a cause of challenge, but a *principal* cause. The collection of old cases in Viner discloses a good deal of confusion upon the point. But if, after all, there be doubt upon the English decisions, there can be none upon the present case, if this court will adhere to their own adjudged authorities.

*J. Sudam* and *Talcott*, (attorney general,) contra. We admit that the case is one as to which an abudance of authority may be found on both sides. One thing, however, was agreed by the judge who granted the writ of certiorari, *(6 Cowen, 557,) and must be conceded here; that to warrant the interference of this court, the cause of challenge must be a principal one; and that the district attorney must be holden to have demurred to the challenge. It will be very difficult to show that where he is merely passive, he shall be said to have demurred. It is clear from all the cases, that there must be a demurrer entered of record before the challenge can be reviewed on certiorari. The judge might, as he did, for the purpose of granting the writ, presume a demurrer; but it is now repelled by the return. No demurrer appears. Can this court make an issue in law, for the court below? The record must be received to speak for itself. There is no remedy in the nature of a writ of error, as upon a bill of exceptions, and no demurrer appears. The English cases require the challenge to be spread formally upon the record with the issue. If it is not done in the first instance, a special certiorari must go, for the purpose of having it returned; or the return must be amended in some other way. This could not be done in the present case. It was the fault of the defendants below, that they did not compel the district attorney to take issue or demur. If, instead of the matter being disposed of as a principal cause of challenge, it was treated as one to the favor, the judge, by consent, being chosen, or acting as trior, there is no means of placing it on the return. It must be considered as out of the question.

Although this challenge has been allowed by our own reports, none of them pretend to give it a character as a challenge for principal cause, or to the favor, except *Pringle* v. *Huse*, (1 Cowen, 432.) But that case did not involve the question. It was a motion for judgment, as in case of nonsuit, for not going to trial, according to the course of the court. The motion was resisted on the grounds that certain irregularities had been committed in

empannelling the jury; and that the triors had improperly found one of the jurors indifferent, upon the question of his having formed and expressed an opinion. The simple question was, whether the party had reason to suppose, *under the circumstances, that he would not be safe in the hands of the particular jury. The court held that he had; and denied the motion. The chief justice, in the course of his remarks, speaks of the challenge as being one for principal cause. But the remark is incidental; founded on his general recollection; and he did not go into the authorities; nor was it necessary for him to do so. The note of the reporter is a mere collection from the books on the subject of challenge generally. The other American cases are also subject to the remark, that they do not define the nature of the challenge. The observations of Marshall, Ch. J. on Col. Burr's trial, cited by Mr. Justice Woodworth on granting the certiorari, in 6 Cowen, and now again relied upon, are certainly the strongest against us; but they do not go to the distinction whether the challenge shall be for principal cause, or whether the expression of opinion is mere evidence to triors on a challenge to the favor. The proceedings in that case were informal; and the chief justice is certainly not borne out by the common law in the full extent of the practice which he adopted on that occasion. He allowed the question to be put to the jurors themselves, whether they had formed or expressed opinions. On this point, the authorities were very fully examined in *The State* v. *Baldwin*, (1 Const. Rep. of So. Car. 289,) where it was held that the juror could not be examined; but that prejudice, or the expression of an opinion, must be shown by other testimony. It is evident that the case of Col. Burr proceeded on the express declaration of the constitution of the United States, and the practice of courts under our federal system of jurisprudence; not on the doctrines of the common law. The rules of the latter were disregarded. The same remark applies to the other decisions, or practices which have prevailed in the circuit courts of the United States. Indeed, such has been the comity between the court and the bar, on this subject, that

the distinction now sought for, can hardly be deduced from a single case passing directly upon it. And, for the same reason, very little light can be thrown upon the question from the *different forms of trial applicable to the different kinds of challenge. The nature of the challenge, and the mode of trying it, often varies according to the nature of the evidence offered and produced to prove it. Thus, that one of the triors had sat on the grand jury, or on another petit jury where the same question was tried, if the record is appealed to, becomes a principal cause of challenge, and is to be tried by the court. Otherwise, where the offer is to show the fact by parol. There the question is submitted to triors, as relating to the favor merely. (Tr. per Pais, 193, 8th ed.)

As to the *King* v. *Edmonds*, 4 B. & A. 470, the principal authority upon which the court below acted, and on which we certainly rely, it proves two things pertinent to this case ; 1. That a writ of error, not a certiorari, is the proper remedy for refusing to allow a challenge ; and 2. That the expression of an opinion is not, *per se*, a cause of challenge. Id. 473, 4. & 490. Both points certainly entered into the discussion of that case, and especially, it cannot be said, that the latter was gratuitous merely. It was made a point on the motion for a new trial, and was overruled. True, the case being since our revolution, is not binding ; but it is very high evidence of the English common law. The reasoning of the court deserves the greatest respect. There is no general rule by which we can determine the nature of the challenge. All we claim from that case is, that the having expressed an opinion goes to the favor, and is not a principal cause ; that it does not follow of necessity, and in judgment of law, because a juror has expressed an opinion, he must be excluded as incompetent. The question would seem, from the nature of the case, to be still open. Though he has expressed an opinion, he may still be indifferent. We insist that the question is one for triors. It is among the multifarious and undefined grounds upon which they may, or may not pronounce him indifferent. If this be so, it follows that the decision of the court below

cannot be reviewed in this form. A grand juror was excluded by statute, on the ground that he had once judicially passed upon the subject *of dispute. This might have been so at common law for the same reason. But it does not touch the present question. The evidence produced, however, is not very strong that this was the common law doctrine. Hawkins does not venture to assert this directly; but puts it forward with a *semble*. Chitty lays down the rule in question here, with the qualifying circumstance of malice; and is certainly a very strong authority in support of *The King* v. *Edmonds*. 1 Chit. C. L. 542. It is the rule of the present enlightened age of British jurisprudence, verified by a most respectable historian of her criminal law; a man acquainted with her law, not only upon authority, but as it prevails in practice. In *Cook's case*, 4 Harg. St. Tr. 747, the decision passed hastily; and without opposition from the counsel for the crown; and is rather referable to the spirit of comity to which we before alluded, than to be respected as an authority. Beside, the case does not determine the nature of the challenge.

It is now said that the court are bound to notice the merits, whether they are properly returned or not. On examination of the authorities, precisely the reverse will appear to be established. 1 Chit. C. L. 393, 394; 2 Salk. 493; Bac. Abr. Certiorari, (H.); 2 Caines, 179.

The opposite counsel is mistaken in saying the books do not enumerate causes of challenge to the favor. In 1 Chit. C. L. 544, several instances are given of grounds for this challenge.

Where the challenge is for principal cause, the specific ground must be embodied in the record. How far shall the doctrine of formed opinion be carried? If it be enough and conclusive, to have formed an opinion simply, it must extend to impressions grounded on rumor; or on an actual view of the facts. One murders in the presence of another. Is the latter incompetent to try the murderer? It is inverting the spirit of the ancient common law, to say he is not. That sought for jurors who understood most of the subject. Yet he cannot but have made up an opinion.

Must the opinion be formed on the fact, or law, or both ? <span>NEW YORK,<br>May, 1827.</span>
So many circumstances seem to enter into the question, <span>The People<br>v.<br>Vermilyea.</span>
*that it is safer to leave it to triors.  Impartiality does not
mean a perfect freedom from opinion ; but rather from an
undue prepossession.

*A. Spencer*, in reply.  Had gentlemen read the learned
opinion of his honor, the judge who allowed the certiorari,
with proper attention, I think we should not have been as-
sailed by the technical objection that there is nothing tan-
gible on this record.  All the facts are returned which
were before the judge.  And the answer is, that though
not a formal, there was a substantial demurrer to the
challenge.  The decision passed upon the law arising upon
an admitted state of facts.  If, as is said, the district at-
torney was passive, it does not help the case.  Mr. Justice
Woodworth, on granting the writ, refers to a case in Bur-
row, a farther account of which is given in Wooddeson's
Lectures ; by which it appears to be the duty of the clerk
to note down the form of the proceeding, so as to make it
correspond with the substance.  Here the challenge was
treated as if there had been a demurrer.  This was the
substance of the proceeding.  The whole appearing on the
record, we are not to suffer because the clerk has neglected
his duty to put it in form.  The same formal circumstances
are not necessary in a demurrer to a challenge, as to a plea.
The moment it is agreed on at the bar, it is deemed a part
of the record, and should be entered as such.  *Mounson* and
*West's case*, 3 Leon. 222.  The prothonotaries should enter
it of right.  Id.  We could not control the mode in which
the district attorney thought proper to raise the question,
or the judge to pronounce his decision.  We made the
challenge ; its truth was admitted ; but it was overruled as
insufficient in law.  So far we can speak from this record.
The injury to us was the same as if the proceeding had
been most formal and technical.  We say here has been
all the causes and consequences of a demurrer improperly
allowed.  We ask a corresponding consequence in this
court ; a reversal of the decision, and a new trial.  If the

NEW YORK,
May, 1827.

The People
v.
Vermilyea.

proper forms have been disregarded in the court below, this is another *error of which we have a right to complain and insist on the cause being sent down for its correction.

If a writ of error was the only proper remedy, gentlemen should have moved to quash the certiorari.

It is said, by way of questioning the common law soundness of Ch. Justice Marshall's practice in Col. *Burr's* case, that he erred there in suffering the jurors to be interrogated; that he must have proceeded on the law peculiar to the U. S. courts; but the premises fail the gentlemen. It was expressly held by this court, in *Pringle* v. *Huse*, 1 Cowen, 432, that a juror may be examined touching his opinion. It is not true that the common law is inapplicable to the criminal courts of the United States, farther than it respects their jurisdiction. When once legally possessed of the cause, they uniformly proceed according to the course of the common law, if not controlled by constitution or statute. Are not our rights to an impartial jury as perfect as if it were to be judged by the constitution of the United States? *The Commonwealth* v. *Hussey*, 13 Mass. Rep. 221, proceeded on the common law. This will not be questioned. There, a juror who had formed and expressed an opinion, on hearing one side of the case only, was pronounced incompetent. No statute is mentioned as the foundation of that decision. It is said by Ld. Coke, the juror must stand indifferent. What is indifferency? Lexicographers define it to a neutrality of mind. A rule of law cannot be right which the whole world would regard with detestation. One wants no law to determine the meaning. When it is once conceded that we are entitled to an impartial jury, common sense determines this question. The authorities, however, are numerous and almost uniform. But if before 1775 their bearing was against us, it is not to be denied that in the progress of human society, and the march of the human mind, there has been an imperceptible, a gradual change in the law. It is the same in that as in the arts and sciences. It adapts itself to human circumstances in every age. We are not stationary; but going on in common with the rest of mankind. The au-

thorities already cited, *show an increasing inclination in our courts to secure by every reasonable means, an impartial jury. I will merely add references to 3 Dall. 518, and 7 Cranch. 291. *The State* v. *Baldwin*, 1 Const. Rep. So. Car. 289, has been cited on the other side. But though we think the court in that case too strict in the admission of evidence to prove the opinion of the jury, it is a decisive authority for us, that when once the opinion is proved, it stands as a good cause of challenge. The court were divided on the question of evidence. The quotation in the opening from Swift's system, who was lately Ch. J. of Connecticut, is a direct declaration, that the having expressed an opinion is, of itself, a principal cause of challenge. I agree with the counsel opposed, that the opinions of late learned elementary writers are high evidence of the law; for they speak not only from books, but what they see of practice.

I take the case put of the witness to a murder; and say that he is not a competent juror. The ancient law did not seek jurors on account of their knowledge of the cause; but of the parties and witnesses. Even in that respect, the law was altered for very good reasons. It was found dangerous to the rights of parties. They were too often the victims of neighborhood prejudice and partiality.

We are told by the other side, that the exclusion of a grand juror, from trying the indictment which he had found, is not very satisfactorily shown to be a common law doctrine. True, Hawkins suggests this with a *semble;* but a farther examination of the subject will remove all doubt. Hawkins cites Staunford's Pleas of the Crown, who lays down the doctrine from Britton. The latter wrote long before the statute was passed. That it was merely declaratory of the common law, will also be seen by 2 Reeve's History, 459. If then it be true, that the common law excluded a juror whose opinion stood on only part of the evidence, how much more strongly does it follow, where, as in this case, the whole cause has been heard. The juror had made up his mind on full proof. It is not necessary to answer, gentlemen, whether a juror should be excluded

NEW YORK, because he has pre-judged the law of the case alone. Un
May, 1827.
——————— less *the defendants could produce new and weighty evi-
The People
v.        dence, they must have been convicted, so far as their con-
Vermilyea. viction depended on Norwood.

As to the case of *The King* v. *Edmonds*, it has already
been sufficiently answered. I aver, that the decision was not
only extra-judicial, but was founded on a perversion of the
authorities referred to. Hawkins, in particular, who is
much relied on, never used the words imputed to him by
Ch. J. Abbott.

*Curia, per* WOODWORTH, J. This case has been discussed
by the counsel with great ability. The court has been ma
terially aided by the researches they have made.

The opinion which I expressed on allowing the certio-
rari, has been confirmed; as well by the arguments at the
bar, as by my own investigation.

It was not denied by the counsel for the people, that if
the challenge to Norwood was for principal cause, the pro-
ceedings in the court below became matter of record; and
were liable to review in this court. I shall therefore not
add anything to what I said upon the subject, on the for-
mer occasion.

The first question which I shall consider, will be, whether
the forming or expressing by a juror of an opinion, that
the party whom he is called to try, is guilty of the offence
imputed to him by the indictment, such opinion being
founded on the hearing of all the testimony in a former trial
of the same indictment, constitutes a good cause of chal-
lenge; and secondly, whether it is a principal cause, or
merely one to the favor.[1]

[1] An hypothetical opinion as to guilt does not disqualify a juror, but it
is some evidence of bias, upon which triors in their discretion may set a juror
aside. *Freeman* v. *The People*, 4 Denio, 9.

That a juror has formed an unfavorable opinion of the accused, is not
enough to exclude him from the panel, if he believes that he can true
deliverance make according to the evidence. *The People* v. *Lohman*, 2
Barb. 216.

Upon trial of challenge for principal cause, for having formed and ex-
pressed an opinion of guilt or innocence; the challenging party cannot ask the

It is admitted that every citizen, whether arraigned for crime or impleaded in a civil action, is entitled to a trial by juror whether he has an impression as to defendant's guilt or innocence; otherwise, when the challenge is for favor on the ground of bias. *People* v. *Honeyman*, 3 Denio, 121.

On challenge for favor on account of bias, the juror should not be set aside unless he has such settled opinions that he could not render verdict on the evidence alone; (*The People* v. *Bodine*, 1 Denio, 281, explained.) Ib.

The forming and expressing an opinion by a juror upon the guilt or innocence of a party on trial for a felony is a principal cause of challenge; the mere forming of an opinion is enough. *The People* v *Rathbun*, 21 Wen. 509.

If a juror have expressed an opinion against the party, though from his knowledge of the cause, and not from any favor or ill will, yet this is a principal cause for challenge. *Ex parte Vermilyea*, 6 Cow. 555.

So, it seems, if his opinion be grounded on the information of those who are acquainted with the facts. Otherwise, where this opinion is grounded on mere rumor. Ib.

On challenge for favor, any circumstance from which prejudice may justly be inferred, although weak in degree, is admissible evidence before the triors; on such challenge a fixed opinion of guilt need not be shown, though it may be necessary on a challenge for principal cause. *People* v. *Bodine*, 1 Denio, 281.

A juror challenged for favor testifies before the triors that he had formed no opinion as to the guilt, but had an impression that the general character of the prisoner was bad. The question whether he would disregard what he had heard and read, and render verdict according to evidence, was objected to; allowed; and exception taken: held, that the question must elicit from the juror the conclusion whether he was conscious of his ability to render a verdict according to the evidence, notwithstanding his impressions, and was therefore properly allowed. *Lohman* v. *The People*, 1 Com. 380.

If a juror has said, that if the reports of the neighbors were correct, the defendant was wrong, and the plaintiff was right, it is not a sufficient objection to his being sworn and empannelled. *Durell* v. *Mosher*, 8 J. R. 445.

It is a good cause of challenge to a juror, that he has previously given his opinion on the question in controversy between the parties. *Blake* v. *Millspaugh*, 1 J. R. 316.

A challenge to a juror for principal cause was sustained where the juror had said that he believed the defendant was guilty, although he testified that he had no fixed opinion upon the subject of the defendant's guilt; that he only entertained impressions derived from history and common reports, meaning thereby printed statements in papers, and reports in conversations; that he had never heard witnesses to the transaction testify nor say anything on the subject in question; if the evidence supported the circumstances he had heard, he had a fixed belief respecting the guilt of the defendant; if these circumstances should be done away by evidence, he should not consider him guilty. *The People* v. *Mather*, 4 Wen. 22.

NEW YORK, a fair and impartial jury. The trial by jury is justly con
May, 1827. sidered an invaluable privilege; but it would become a
The People mockery, if persons who had pre-judged the case were ad-
v. mitted as impartial triors. All the elementary writers, with
Vermilyea. the exception of Chitty, lay down the proposition broadly,
that if a juror has declared his opinion beforehand, it is a

So a juror was held properly excluded, on a challenge to the favor, who testified that he had formed, though he had not expressed, an opinion that the defendant was guilty. His opinion was formed upon reports and what he had read. On the trial of a former challenge, he had heard a witness testify respecting the subject in question. His opinion was made up previous to hearing that testimony, but what the witnesses had stated had tended to strengthen his opinion. He had read reports of trials and affidavits or statements under oath relating to the same subject. His opinion was made up from reading them and other matters. And the charge of the judge to the triors in this case was approved, in which he instructed them that if they believed that the juror had a fixed opinion, which it would require testimony to remove, he was disqualified, whether that opinion was founded on rumor alone or on rumor and printed statements. Ib.

A juror who has formed an opinion of the guilt of the accused is not competent to serve; although he declares that if the circumstances on which his opinion is founded are not supported by proof, his opinion of the guilt of the accused will be removed. Ib.

There is no distinction as to the grounds of the opinion formed by the juror of the guilt of the accused; whether it be founded on being an eye-witness, or on hearing the testimony of those who were present at the transaction, or whether it be based on rumors, reports and newspaper publications; in either case it is good cause of challenge. Ib.

The law attaches the disqualification to the fact of forming and expressing an opinion, and does not look beyond, to examine the occasion or weigh the evidence on which that opinion was founded. *The People v. Marvin*, 4 Wen. 229; *Blake v. Millspaugh*, 1 J. R. 316; *Pringle v. Huse*, 1 Cow. 432.

There is, however, a distinction between positive and hypothetical opinion. *Durell v. Mosher*, 8 J. R. 445.

Ch. J. Spencer considered that if the opinions of jurors were formed on mere rumors and reports, such opinions did not disqualify them. *The People v. Van Alstyne*, 6 Cow. 565; *Coleman v. Hagerman*, ib.

Mr. J. Woodworth remarked, that the principle on which these cases were decided was, that an opinion formed and expressed by a juror, is of itself evidence that he does not stand indifferent between the parties. *The People v. Mather*, 4 Wen. 229.

Mr. J. Marcy observes: "That too much stress ought not to have been laid on the juror's declaration, that if the circumstances on which his opinion was founded should not be supported by the evidence, his opinion of the defendant's guilt would be removed. Ib.

See N Y. Dig. vol. 3, tit. *Challenging.*

good cause of challenge. 1 Archbold, 181, 182; *2 Tidd. 779, 780; Bacon, title Juries, (E. 5;) Bull. N. P. 307; Hale's Com. Law, 138. Lord Coke, (1 Co. on Littleton, 155, 6,) says, " he ought to be least suspicious; that is, to be indifferent, as he stands unsworn, and then he is accounted in law, *liber et legalis homo;* otherwise he may be challenged, and not suffered to be sworn."

NEW YORK,
May, 1827.

The People
v.
Vermilyea.

What is meant by a person standing indifferent? Manifestly, that the mind is in a state of neutrality, as respects the person, and the matter to be tried; that there exists no bias, for or against either party, in the mind of the juror, calculated to operate upon him; that he comes to the trial with a mind uncommitted, and prepared to weigh the evidence in impartial scales. It seems to me, that a juror in the situation of Mr. Norwood, so far from standing indifferent, had already condemned the defendants. He stated, that if the evidence on the second trial should be the same as on the first, he should pronounce them guilty.

It was well remarked by the defendants' counsel, that unless the defendants produced some new and weighty evidence to change the preconceived opinion of the juror, their conviction was inevitable, so far as their conviction depended on him. We cannot presume that the evidence, on the part of the public, would be less convincing than on the first trial; or that the defendants could adduce any important additional testimony. It will not be pretended that any of the jurors, who sat on the former trial, would be admissible as jurors on the second trial of the same indictment. I cannot discriminate between those jurors and Norwood. He had formed as decided an opinion on the merits of the case, as any of them. That it is a valid exception to a juror, that he had previously given an opinion on the question in controversy, has been decided in this court, in the case of *Blake* v. *Millspaugh*, 1 John. 316, and *Pringle* v. *Huse*, 1 Cowen. 432.

It is a mistake to suppose that the case of *Durell* v. *Mosher*, 8 John, 445, overruled the decision of this court in *Blake* v. *Millspaugh*. I endeavored, on a former occasion, to show that the cases are perfectly consistent with each

NEW YORK, other. As far as my researches have extended, there *has
May, 1827.
——————— been a uniformity of decision in all the courts of the seve-
The People
v.      ral states of the union, and in the circuit court of the
Vermilyea. United States.

Chief Justice Swift, in his system, (2 vol. 232,) states the
law of Connecticut, (and in this respect it is there under-
stood to be the law of England,) that if a juror has pub-
lished his opinion upon the particular case, it is a principal
cause of challenge. In Massachusetts, if a juror is called,
who was of the grand jury when the indictment was found,
it has been held to render him not impartial, as a juror on
the traverse of the indictment; and this without reference
to any statutory provision.

The same doctrine was maintained by the constitutional
court of South Carolina, (*State* v. *Baldwin*, 1 Con. Rep. S.
C. 289, 301, 309, 321.)

I had occasion in my former opinion, to notice the de-
cision of judge Iredell, on the motion for a new trial in
the cause of Fries, and also, in my judgment, the conclusive
arguments of chief justice Marshall, on the trial of Col.
Burr. We have been referred to the impeachment of judge
Chase, by the House of Representatives of the United States.
One of the articles against him was, for the admission of
Basset, as a juror on the trial of Callender, under the alien
and sedition law. Judge Chase, in his answer, admits the
forming and expressing of an opinion on the merits of a
case to be tried, disqualifies from serving as juror. He
puts the admission of Basset, as a juror, upon the ground
adopted by this court, in *Durell* v. *Mosher*, that a hypothe-
tical opinion founded on mere rumor, does not disqualify.
Since the trial of the indictment in this case, the trial of
Merchant and Curtis took place in Massachusetts, before
Mr. Justice Story; and every person who had formed or
expressed an opinion of the guilt of the accused, was set
aside. I apprehend that no adjudged case can be found,
in any of the courts in this country, where a juror has been
admitted who had formed a decided opinion on the merits
of the case.

On the argument, the case of *The King* v. *Edmonds*, (4

Bain. & Ald. 470,) was cited as an authority, that by *the common law of England, the expression of an opinion by a juror, of the defendant's guilt, is not a cause of challenge, unless it be made in terms, or under circumstances denoting an ill intention towards the party challenging.

It was contended by the defendant's counsel, that the opinion of the learned chief justice was extra-judicial, and also, that he had misquoted serjeant Hawkins, the authority principally relied on in support of the proposition. The charge calls for a critical examination.

Chief Justice Abbott, after citing Hawk. b. 2, ch. 42, s. 28, says, "the language of Mr. sergeant Hawkins, on this subject is, that if the juryman hath declared his opinion beforehand, that the party is guilty, or will be hanged; yet if it should appear that the juror hath made such declaration from his knowledge of the cause, and not out of any ill will to the party, it is no cause of challenge." And then the chief justice adds, "so that in the opinion of this learned writer, the declaration of a juryman will not be a good cause of challenge, unless it be made in terms, or under circumstances denoting an ill intention towards the party challenging.

The quotation from Hawkins is not correct; neither is the opinion imputed to him contained in the section.

The whole of the 28th section referred to by the chief justice, is thus: "It hath been adjudged a good cause of challenge on the part of the prisoner, that the juror hath a claim to the forfeiture, which shall be caused by the party's attainder or conviction; or that he hath declared his opinion beforehand, that the party is guilty, or will be hanged, or the like; yet it hath been adjudged, that if it shall appear that the juror made such declaration, from his knowledge of the cause, and not out of any ill will to the party, it is no cause of challenge."

Sergeant Hawkins, or Mr. Leach, the editor of the last edition of his treatise, refers for support of the first division, to wit: "that it is a good cause of challenge, that a juror has declared his opinion beforehand, and that the party is guilty, or will be hanged, or the like," to the 21 H. 7

NEW YORK,
May, 1827.
The People
v.
Vermilyea.

*where it was decided, that it is a good cause of challenge, to say that a juryman has reported, that if he be empannelled, he will pass for the plaintiff; and for the second proposition, " that it hath been adjudged, that if it shall appear that the juror made such declaration from his knowledge of the cause, and not out of any ill will to the party, it is no cause of challenge," the reference in Hawkins, is to 7 H. 6, which contains justice Babington's charge to the triors, in an action of replevin, maintaining the doctrine stated by sergeant Hawkins. Thus, it is manifest, *he* gave no opinion of his own, but merely collected the contradictory opinions upon that question. Of this, there can be no doubt on referring to the 33d section of the same book and chapter; where he observes, " But these matters seeming to be unsettled, I shall leave them to be further considered by others ;" evidently referring to all the antecedent conflicting opinions, and not intending to express any opinion himself. It appears, then, that the doctrine laid down by Babington, justice, in 7 H. 6, was overruled by the king's bench in 21 H. 7. It is somewhat remarkable that the chief justice seems to have adopted the former, and rejected the latter decision.

In the course of chief justice Abbott's opinion, he refers to Peter Cook's case, (13 St. Trials, 334,) to prove that a juror himself is not to be interrogated, when the cause of challenge tends to his dishonor; and that it is a very dishonorable thing for a man to express ill will towards a person accused of a crime, in regard to the matter of his accusation.

I cannot accede to the proposition that a juror may not be questioned, whether he has formed or expressed an opinion. In the case before us, it is altogether improbable that Norwood, when he declared his opinon, had any idea of being called on as a juror. Having heard the trial, he could scarcely avoid forming an opinion; and it by no means affects his honor or integrity to avow it. I cannot account for the silence of chief justice Abbott, when com[*126]menting on Peter Cook's trial, as regards the right of *interrogating a juror in case of a challenge, in not noticing

the decision of the court, on the right of challenging a juror for having declared his opinion beforehand. That trial took place at the Old Bailey, in 1696. Peter Cook was indicted for high treason. He thus addressed the court: "My lord, before the jury is called, I am advised, that if any of the jury have said already that I am guilty, or they will find me guilty, or I shall suffer, or will be hanged, or the like, they are not fit and proper men to be of the jury." To which the lord chief justice Treby replied, "You say right, sir; it is a good cause of challenge." Justice Rokeby said, "that will be a sufficient cause, if when they come to the book, you object and be ready to prove it."

Justice Powell said, "in a civil case, it would be a good cause of challenge, if a man have given his opinion about the right, one way or other."

*Treby*, chief justice, further remarked, "but if any man in this panel have any particular displeasure to the prisoner, or be unindifferent, or have declared himself so, I do admonish and desire him to discover so much in general; for it is not fit, nor for the honor of the king's justice, that such a man should serve on the jury."

Thus it appears, that on Peter Cook's trial, the great difficulty was, whether the jurors should be examined, to prove what the judge thought impeached their honor; that they had pre-judged the prisoner. But on the point, whether the expression of an opinion by a juror, of the prisoner's guilt, was a good cause of challenge, the judges expressed themselves as I have stated. I have not found a single adjudged case, since the case of Peter Cook, controverting the opinion there expressed.

Upon the reason of the thing, the authority of adjudged cases, and the general understanding of the bench and bar, I have no doubt that the law is not chargeable with such injustice, as to warrant the admission of a juror, who, from a knowledge of the facts, or information derived from those who knew the facts, shall have formed or expressed an opinion. I might proceed to illustrate my views by analogy, between the case at bar, and other cases, where the right of challenge has never been disputed; but I deem it un-

NEW YORK, May, 1827.

The People v. Vermillyea.

[*127]

NEW YORK,
May, 1827.

The People
v.
Vermilyea.

necessary; and will only add, that the statutory provision, authorizing the challenge of a grand juror, who shall be called on the petit jury to try the same indictment, is clearly in affirmance of the common law; and proves that when a man has formed an opinion, even upon an *ex parte* hearing, it is a valid exception to him; *a fortiori*, the objection is conclusive, if the juror has formed an opinion upon hearing the whole case. That the statute is in affirmance of the common law, is clearly established. In 2 Haw. ch. 43, s. 27, the author observes, "it is expressly enacted by 25th Ed. 3, c. 3, which seems to have been made in affirmance of the common law, that no indictor shall be put in inquests, upon deliverance of the indictees of felonies or trespass, if he be challenged for that same cause, by him which is so indicted." This exception against a juror has also been adjudged good, "upon the trial of another indictment or action, wherein the same matter is either in question, or happens to be material, though not directly in issue." (Ibid.)

Reeve, in that part of his history of the English law which relates to the reign of Edward 3, (2 Reeve, 459, 460,) gives this account of that statute: "It had become one of the commonest challenges taken to a juror, that he was one of the indictors: but notwithstanding the old law allowed this challenge, it is doubtful how far it was observed; for we find a petition of the commons in 14 Edward 3, for a law to confirm it. This was at length done by statute, 25 Ed. 3."

To remove all doubt that such was the common law, it is mentioned by Britton, (ch. 4, fol. 12,) who wrote in the reign of Edward 1, and whose treatise is said to have been dictated by that prince, the Justinian of England, that a defendant might challenge a juror, because he was one of those who indicted him; and there was a presumption that all who indicted him still bore the same ill will against him. Britton wrote many years before the statute 25th Edward 3, was passed.

[*128]

*From this review it seems to follow, that the ingredient of ill will, superadded to an opinion formed, never was en-

grafted upon the common law in England. The doctrine rests on the charge of justice Babington to the triors, in 7 H. 6; and cannot be reconciled with the acknowledged right of the accused to challenge a grand juror, who, by the finding of the indictment, had expressed an opinion on the subject. I have not discovered that Lord Coke refers to the case from 7 H. 6. It is difficult to account for the omission, except on the ground, that it was not considered authority; but be that as it may, it is evidently irreconcilable with Lord Coke's doctrine on the subject of challenge.

The wisdom of the law has always required that the jurors should come to the trial without prejudice or partiality, as respects either party. Can it be for a moment supposed, that a man who had formed such an opinion as Norwood had, could stand indifferent or impartial? As observed in my former opinion, all experience proves the difficulty of getting rid of opinions deliberately formed. I have constantly referred to the juror Norwood, because the case was argued on the exception to him; but several of the other jurors were equally exceptionable.

The remaining question is, was the opinion expressed by Norwood a ground of principal challenge? The court below judged rightly in considering it made for principal cause. Such challenges are for causes which, in judgment of law, indicate bias, or which, if found true, are sufficient of themselves, without being submitted to the discretion of triors; or for causes which prove evident favor or enmity in the juror. Trials per Pais, 122, 128.

If I have not erred in what I have already said, the law does presume that the expression of an opinion on the merits of a case indicates bias, or that the mind of the juror is decidedly unfavorable to the defendants. It is then a principal cause of challenge. All the authorities I have cited prove this to be correct. When the law has declared the consequences of a fact, and the fact be established, it becomes the duty of the court to make the application. *Otherwise, different sets of triors might decide differently; [*129] and thus the law itself be perverted.

Upon mature consideration, and a patient review of all

NEW YORK, the authorities, it is the opinion of the court, that the doc-
May, 1827.
——————— trine laid down by chief justice Abbott, in relation to the
The People
v.          right of challenge, was not the common law of England, on
Vermilyea.   the 19th of April, 1775, and never has been considered as
the law in this country.

We yield more readily to the convictions expressed, be-
cause they accord with that indulgent spirit, always pro-
fessed by the law towards the accused, as to the conduct
of the prosecution, and the manner of trial. Its progress
has always kept pace with political liberty. From the
reign of the 1st James to that of Queen Ann, during which
time the English constitution underwent some of its most
material improvements, it remained unsettled, whether an
offender, charged with a capital felony, was entitled even
to examine witnesses on oath in his favor. In the struggle
between the crown and aristocracy on the one hand, and
the commons on the other, this question was not lost sight
of. In the reign of James, the right was for the first time
carried by the commons: but it was only to a limited ex-
tent, being confined to the three northern counties of Eng-
land, and to felonies committed in Scotland, but appointed
to be tried in those counties. In the 7th of William 3,
witnesses were first allowed to prisoners on trials for cer-
tain treasons; and in the first year of Queen Ann, the right
was extended to all cases of treason and felony. 4 Black.
Com. 360.

It was not till the 7th William 3, that counsel was
allowed to the prisoner in cases of high treason; and, to this
day, a man indicted for a capital felony is denied counsel
on the question of guilty or not guilty before the jury.
This last fact is a singular feature in the history of English
jurisprudence; but I confess, little more so, than that the
king's bench, in the 19th century, should have denied that
a juror having expressed a deliberate opinion against a
prisoner, was a cause of challenge. It is not surprising,
[*130]    that for the support of such a principle, scarce any *thing
more can be found, than a solitary case in the remote, and
comparatively dark ages of the law. A review of American
authorities on the same question, placing the security of

the citizen, as we think they do, on higher and more certain ground; a ground which is fortified by constitutions or statutes, giving the aid of counsel on all questions, furnishes matter of comparison, decidedly favorable to the institutions of our country. We may, I think, assert without arrogance, that the right of trial by jury has been cultivated with better skill, taken deeper root, and promises to shed a more benign and salutary influence in this land of constitutional liberty, than in the country of its origin.

I have now examined all the questions deemed material in this case. My brethren on the bench concurring in the views I have taken, the consequence is, that a valid principal cause of challenge having been overruled in the court below, a new trial must be granted.

SAVAGE, Ch. J. I have nothing to add, except to express my concurrence in the opinion delivered by Mr. Justice WOODWORTH; and to say that Mr. Justice SUTHERLAND (now absent) also concurs.

On this decision being pronounced,

*D. Selden,* for all the defendants, except Barker, moved that the cause be sent down for trial on the civil side; that the venue be changed from the city and county of New York, to some other county, which the court might designate; and that the court should also pronounce on a question which appeared on the return, relative to a variance between the indictment and the evidence given in the court below; a variance which he contended was fatal; but which the court below overruled as immaterial.

*Motion to change venue, carry cause down on the civil side, &c.*

The motion to change the venue was founded on an affidavit of Vermilyea, that the defendants pleaded separately, not guilty; that after one trial of this cause at the oyer and terminer of New-York, in September, 1826, which lasted 25 days; the jury disagreed, and were discharged; *that the cause was again tried in the same county, in November next thereafter; and lasted 12 days. That during these trials the court room and the avenues and passages, were

[*131]

crowded with spectators, a portion of whom expressed their hostility to the defendants, by clapping hands, stamping and other means. That it appeared that most of the matters of complaint against the defendants were entirely distinct; but owing to the frame of the indictments, and the rules adopted on the trial, they were admitted in evidence; and that various transactions were proved, with which, part of the defendants appeared to have had no connection; that owing to the failure of two certain incorporated companies who had practiced issuing bonds for the payment of money, held by, and yet unpaid, in the hands of great numbers, mostly, if not entirely, in the city of New-York, and with each of which companies some of the defendants were connected, and the losses sustained by several other incorporated companies in the city, which losses were sought to be fixed on the defendants or some of them, added to other causes of individual dislikes, an extent of hostile feeling had been excited against the defendants in the city, which the deponent believed almost commensurate with its population. That the bond and stockholders of the companies named, and those interested therein, were very numerous; and they, and those connected with them by ties of interest or relationship, comprehended a very large body of the people in the city.

That during the first trial, portions of the testimony and proceedings were published from day to day in some of the daily papers. That all the evidence, in many important respects erroneously stated, and injuriously to the defendants' characters, was published after the jury retired, and before they returned, as the deponent believed, in all the daily papers of the city. That only parts of the testimony on the second trial were published, with the opening of the district attorney, and the charge of the judge; but not the [*132]  speeches of counsel. That the charge was *calculated to excite public feeling against the defendants. From the above circumstances and others, the deponent believed, that the defendants could not have a fair and impartial trial in the city. That seven other indictments against other defendants, a portion of them including the present defendants,

or some of them, had also been found in the city, the sub-<sub>
ject of which, the deponent believed, came under examina-
tion in the trials of the indictment in this cause.

*H. Maxwell,* (district attorney,) read an affidavit of one of the marshals of the city, that he constantly attended both trials, to which his attention was directed. He believes that many attended from mere curiosity. That the clapping, stamping and other indications referred to in Vermilyea's affidavit, took place during the trials when the the conduct of the defendant (Barker) was referred to; and were exhibited as well on one side as the other. That during the speeches of Barker, the audience seemed pleased and manifested their feelings several times by voice and movements of various kinds. That he did not believe any persons attended with a view of making any impression on the minds of the jury against the defendants. That during the examination of witnesses on the second trial, very few persons attended; and during that time, no intemperate or improper conduct of any kind was manifested by any of the persons attending. That the speeches of Barker were published in the newspapers; and that he had published a pamphlet containing many matters respecting the trial. That from his opportunity of hearing the expression of public opinion, he believed there could be no difficulty in obtaining a jury in New York.

It further appeared from the certificate of the clerk of the oyer and terminer, that a great number of jurors were returned at each of the terms at which the respective trials took place; and that juries were formed for both trials after very few challenges.

*Seldon,* after discussing the question of variance, proceeded to that branch of the motion, which sought a *change of venue. In support of this, he relied mainly upon what was said by Ld. Mansfield in *Rex* v. *Cowle,* (2 Burr. 859, 60,) that "where an impartial trial cannot be had in the proper county, it shall be tried in the next:" and what he said to the same effect in *Rex* v. *Harris,* (3 Burr. 1333.)

[*133]

NEW YORK, May, 1827. The People v. Vermilyea.

At any rate, he said, the court will send this cause down for trial on the civil side. It was decided in *The People* v. *Townsend*, (1 John. Cas. 104,) that an indictment for perjury, once removed to this court by certiorari, cannot be remitted to the court below for trial; that there is no process known to the law, which will carry it back. That in case of a misdemeanor, it must be tried at bar, or sent down to the circuit. And if the crime be felony, it was formerly doubted whether there was even an election to send it down to the circuit; whether it must not be tried at bar, if tried in this court at all. It is a general rule, that if a record once come into the king's bench, (and the rule is of course the same as to this court,) it cannot be remanded.(a) Had it not been for the statute (1 R. L. 496, s. 7, answering to 6 H. 8, c. 6,) indictments for felonies removed here, must always have remained. It is in virtue of that statute that they go down to the oyer and terminer of the proper county. *Fazacharly* v. *Baldo*, 1 Salk. 352; 6 Mod. 117, 8, S. C.

But suppose this court have a discretion: under the statute relating to felonies, they have a like discretion. They may, or may not send the cause down to the oyer and terminer. Thus, in Goodwin's case, (*People* v. *Goodwin*, 18 John. 206,) which was manslaughter, the cause came to this court on certiorari; and was sent down to the sittings in this city for trial. Admitting, then, for the sake of argument, that the two cases stand on the same footing, we see that the court will prefer the civil side. It saves their immediate control of the whole case.

[*134]

*Maxwell*, (district attorney,) also examined the question of variance.

As to the other questions, he said no motion could be sustained to change the venue, in the proper sense of the word. That must be retained on the record. The only

(a) 1 Roll. Abr. 534, (G.) pl. 2 id. pl. 3, &c. *The King* v. *Holland*, Aleyn, 14. S. C. Styles' Rep. 84, S. C. id. 94, S. C. Bro. Record, 44, 46. Jurisdiction. 48. *Bishop of Bristol* v. *Proctor*, 1 Roll. Rep. 287. *Fazacharly* v *Baldo*, 1 Salk. 352; 6 Mod. 177, 8, S. C.

power the court possesses as to the place of trial, is, to or-
der a suggestion upon the record, that an impartial trial
cannot be had in this city; and direct a trial in some
foreign county ; or rather, as the cases cited from Burrow
say, in the next, or next adjoining county.   This is the
farthest the cases have gone.   Are the court prepared to
say, that the case made out on the affidavits, will warrant
a suggestion that an impartial trial cannot be had in this
city; or if it cannot, that such a trial can be had in an ad·
joining county ?   Three defendants have not felt themselves
warranted in making any affidavit.   Only one of them has
sworn.   He certainly shows but a limited state of excite-
ment, at most ; and even there, his affidavit is met by one
equally strong on the other side.   The expression of opin-
ion in the affidavit is nothing, any farther than it is war·
ranted by the particulars.   In *Rex.* v *Harris,* (3 Burr. 1333,)
Ld. Mansfield says, there must be a clear and solid founda-
tion for the suggestion.   And vid. *New York* v. *Dawson,* 2
John. Cas. 335, 6.

But if the affidavit of the defendant who has sworn, is
enough to make out the necessary clear and solid founda-
tion; what evidence have the court that the same objection
does not exist in the adjoining counties ?   They, of course
have heard as much of the trial, and have read the news-
papers mentioned in the affidavits, even with more atten-
tion than many of the citizens of New York.   In the more
scattered and more inquisitive population of the country, we
should, I believe, seek with less hope of an unbiassed jury
than among the crowded and various population of a great
city, though the very theatre of the alleged offence.   The
population here is more mixed; many are engaged in pur-
suits which prevent their attention from being particularly
occupied with this affair.   There cannot be a doubt that a
large portion of the community can be found with minds
wholly uncommitted, and coming within the strictest idea
of impartial jurors, which the court have advanced; or
that even the counsel concerned will think of advancing.

At any rate, the experiment should be made here.   If
it fails, the defendants can then move in August term.

NEW YORK,
May, 1827.

The People
v.
Vermilyea.

[*135]

NEW YORK,
May, 1827.

The People
v.
Vermilyea.

As to the power of the court to remit the record, if a statute was thought necessary to enable them to send back indictments for felony, it does not allow that one was required in case of misdemeanors. They are a less important class of crime; and the propriety of their being remitted is more striking. There being no statute on the subject, therefore; the inference would rather be that the court had the power at common law. By the statute, (1 R. L. 339, s. 15,) the power of the oyer and terminer is general, to hear and determine all crimes and misdemeanors, and deliver the gaols of all prisoners, without exception.

True, there is no writ in the books for carrying the cause back. But the usual practice has been, whenever a record is remitted, to enter an order or memorandum in the minutes of the court; and it is then remitted without any farther attention to form. This accounts for there being no writ.

*T. J. Oakley*, in reply, (*after arguing the question of variance.*) If the court can now judicially pass on this question, it is at least an additional reason why they should retain a prompt and complete control of the cause, by sending it down on the civil side, even if they have a right to send it to the oyer and terminer. It is a question of evidence, which cannot come up on bill of exceptions, (this being a criminal cause;) and the court will retain their control for the sake of saving the defendant's rights in their full extent. The court can then grant a new trial for any mistake of the judge, as in a civil cause. (*The People* v. *Crosswell*, 1 Caines. 119.)

Motion to try Barker separately, &c.

*Barker*, in person, moved for a rule that he be tried separately from the other defendants, by a struck jury, at the bar of the supreme court, or at the circuit on the civil side.

[*136]

*Savage, Ch. J. Mr. *Barker*, have you given notice of this motion to the district attorney?

*Barker.* I have not.

SAVAGE, Ch. J. This was necessary.

*Maxwell,* (district attorney,) being present, consented that the motion should be made without notice.

*Barker* then read his own affidavit, that the case was rendered complicated by coupling him with others, and with transactions and institutions with which he had no connection; that the circuit judge declared during the first trial, that it was so complicated that the human mind was scarcely capable of comprehending its merits. That he pressed the oyer and terminer for a separate trial; and offered to swear that he did not think that any jury formed in the ordinary way, could be made to understand his case, if he should be tried in connection with the other defendants; but a separate trial was denied. That three defendants, originally included in the same indictment, had been separated before his motion to be tried separately was made; one of whom was afterwards tried and acquitted. That another had furnished papers against the deponent; and that three of the counsel for the other defendants, made a violent attack on the deponent in summing up.

As a reason for a trial at bar, he urged that the case was one of great difficulty, and which required great examination. As such, it was within the meaning of the statute, (1 R. L. 325, s. 1,) which provides that the trial of such a case at bar may be ordered by this court.

SAVAGE, Ch. J. The counsel for three of the defendants move that the cause shall be carried down to the circuit for trial, instead of being remitted to the oyer and terminer; and that the venue be changed. They also request us to instruct the circuit judge on a question of variance between the indictment and evidence, which was raised and [*137] passed upon by the court below. That court *held the variance to be immaterial. It is contended that they erred in this, among other things; and in returning to the certiorari,

which was granted particularly to bring up the question of challenge, they have gone on to state the evidence, out of which the motion to instruct arises.

We cannot notice that part of the return which relates to the evidence. The testimony is no part of the record in the court below. It is not, therefore, removable either by writ of error or certiorari. The statute authorizing a bill of exceptions does not extend to criminal cases; and if they were reached by the statute, no bill has been signed. The circumstance that the matter appears on the return, if it be not properly there, will not authorize us to notice it for the purpose of now expressing an opinion upon its merits.

This is, however, one reason why we should listen to the motion for continuing this cause on the civil side. We know enough of the cause to see that several grave questions may arise, which it may be desirable, on the part of the defendants, to have reviewed; but in relation to which, they might be embarrassed, and perhaps entirely defeated, if put to their remedy by certiorari from the court below. Without saying, therefore, whether we have the power to send down a record once removed by certiorari, except upon the statute which relates to felonies, we grant the motion that this cause be carried down to the circuit.

Shall it go down to the circuit in the city and county of New York? Changing the venue, speaking technically, is out of the question. The course in criminal prosecutions, where a clear case is made out, is, to order a suggestion upon the record, that a fair and impartial trial cannot be had in the county where the offence is laid. A venire is then awarded to the sheriff of another county, and the cause tried there; the indictment remaining unaltered as to the venue. What is shown to us as the foundation for such a suggestion? General expressions of *belief* are made in the affidavits; but these cannot be regarded on either side. We must look to the facts. These [*138] are tokens of public disapprobation at the City Hall, in the course of *the former trials: the number of challenges; publications in newspapers; and an inclination to fix on

the defendants as the cause of many pecuniary disappoint- <span>NEW YORK,<br>May. 1827.</span> ments in the city. But we are by no means prepared to <span>The People</span> say, from these facts, that an impartial jury cannot be se- <span>v.</span> lected here, especially under the qualifying circumstances <span>Vermilyea.</span> of the case. The motion is supported by a single affidavit, made by one of the defendants. No disinterested citizen attests to any ground for the suggestion; and two of the defendants who move, have made no affidavit. As to the public expressions, it seems from a counter affidavit, that they were not entirely disapprobatory, but sometimes complimentary, especially towards one of the defendants. Publications in the newspapers have been favorable to both sides. We cannot believe, for a moment, that the inhabitants of this large city have been so much and so extensively excited, as to render a fair and impartial trial impossible or even improbable. The motion for a suggestion is, therefore denied.

Mr. Barker submits, on his own behalf, a motion, having a distinct object. He wishes us to order a trial at bar; and, at any rate, that he be tried separately from the other defendants; and by a struck jury. Granting either branch of his motion, would, in effect, separate him from the other defendants.

We think the indictment must go down to the circuit, as to all the defendants, including Mr. Barker; and upon the ordinary venire. The cause going there, the question of severance must be decided by the judge before whom the trial takes place. It is now the settled doctrine, that, the right of peremptory challenge being out of question, two or more defendants jointly indicted, are to be tried jointly or separately in the discretion of the court. Perhaps we might think, were the cause pending before us for trial, and the case presented as it now appears, that the defendants should be separately tried. The ends of justice may doubtless be materially affected by refusing a separate trial in some cases; and where the discretion confided to the judge is not, in the opinion of the bench, properly exercised, they may perhaps grant a new trial for that reason; for it is a legal and not an arbitrary discretion. But

*139

we cannot now decide the point. We do not know how the facts may appear to be at the circuit.

WOODWORTH, J. There is no doubt of our power, upon a proper case, to send a criminal cause down for trial to a county other than that in which the venue is laid. Crimes, however, are essentially local. Hence the venue, as such, cannot be changed.[1] The place of trial must be altered

[1] It seems proper here to remark, that the venue may be changed, on motion of the public prosecutor, if it appears that a fair and impartial trial cannot be had in the county where the indictment was found. And this, although there has been no actual experiment made, by way of trying the cause, or even empannelling a jury in the county where the venue is laid. *The People* v. *Webb*, 1 Hill, 179. There is no fixed rule defining what shall not be received as proof of the fact that a fair and impartial trial cannot be had. Ib.; see *The People* v. *Bodine*, 7 Hill, 147.

In Illinois, a prisoner is entitled to a change of venue whenever, by petition verified by affidavit, he brings himself within the requisitions of the statute; and it is not within the discretion of the court to allow it or not. *Clark* v. *The People*, 1 Scam. Rep. 117; see also, *McGoon* v. *Little*, 2 Gilman, 42. A change of venue may be awarded, in a criminal case, by consent, without requiring a petition or affidavit to be filed for that purpose. *People* v. *Scates*, 3 Scam. 351; see *Davidson* v. *Wheeler*, 1 Morris, 238. Where an indictment was found in one county of Illinois against several jointly, and the venue was changed to another county, on motion of one of the accused, without consent of the others, when he was tried, and afterwards the indictment was returned to the county where it was found, and the others held to answer, it was held that the proceedings were regular. *Hunter* v. *The People*, 1 Scam. 453.

In Indiana, a refusal to change the venue in a criminal case, cannot be assigned for error. *Findley* v. *The State*, 5 Blackf. 576; S. P. *Spence* v. *The State*, 8 Blackf. 201. An order of court changing the venue of an indictment, is conclusive of its own regularity, unless the contrary appear of record. *McCauley* v. *United States*, 1 Morris, 486.

The necessity of changing the venue, in any case, in order to secure an impartial trial, is not to depend upon the suggestion, or even the belief, of the defendant, but upon facts shown to the court, or admitted, sufficient to satisfy the court that the change is necessary to procure an impartial trial. *The State* v. *Burris*, 4 Harring. 582.

The place of trial cannot be changed in a criminal case for the convenience of witnesses or parties, though it may be where a fair and impartial trial cannot be had in the proper county. *People* v. *Harris*, 4 Denio, 150. The practice in the state of New York has been the same since 1830 that it was before that time. Ib. Per *Bronson*, Ch. J. See Waterman's Archbold's Cr. Practice and Pleading, vol. 1, p. 75.

by suggestion, and on clear proof that the cause cannot be tried in the county where the offence is laid, with safety to the rights of the defendant. The present motion rests on a single affidavit of one of the defendants; and, independent of the opposing affidavit, I cannot say I am satisfied there is any danger in a New York jury. Allow the affidavit its full force, and draw every possible inference from it in favor of this branch of the motion, and I think it insufficient. It can hardly be a question, that out of the large and various population of this city, 12 men can be found with minds in a state of complete neutrality. There is less danger of a partial jury since the decision just pronounced, which excludes every one who has expressed an opinion; and opens the full means of ascertaining the fact, even by an appeal to the juror himself under oath. Besides, as we send the cause down on the civil side, it goes subject to all the incidents of an ordinary action between party and party, so far forth as reviewing the proceedings before the circuit judge is concerned. Should errors intervene in the selection of a jury, the receipt of proofs, &c., they can be corrected on motion by the party grieved. There is no need of that consent and co-operation on the part of the circuit court, which would be necessary in an inferior tribunal, to warrant the revisal of a matter out of the record.

To decide now whether the evidence supported the indictment, would be to anticipate that it will be the same on the trial yet to take place. The difficulty may be obviated. The question may or may not arise there; and I *do not think it proper that we should examine and pass upon a point so entirely hypothetical, even supposing it to be properly before us on the return.

[*140]

I concur with the chief justice in his remarks upon Mr. Barker's motion; and particularly in the suggestion upon the question of severance. We do not consider the case before us, for the purpose of deciding what the judge should do in the exercise of that discretion which he undoubtedly possesses. But I clearly hold, that were I presiding at the trial of a criminal charge against persons

*Margin note: NEW YORK, May, 1827. The People v. Vermilyea.*

NEW YORK, May, 1827.

The People v. Vermilyea

jointly indicted, but wholly disconnected in the acts through which they are sought to be convicted; on ascertaining that fact, I should deem it my duty to grant them separate trials. I state this, however, as a general proposition, without saying what this case is. Nor can we anticipate what it will turn out to be at the circuit.

SUTHERLAND, J., not having heard the argument, gave no opinion.

*Maxwell*, (district attorney,) moved that the defendants enter into the proper recognizances.

*Attachment ad testificandum.*

He also suggested, that owing to the new direction the cause was about to take, a difficulty might occur in coercing the attendance of witnesses at the circuit, if they should disobey a subpœna. He had been put to the necessity, on the former trial, of moving for and obtaining from the oyer and terminer, attachments against a number of unwilling witnesses; but was not aware that the circuit court possessed the power to grant that writ, for the purpose of compelling them to testify.

SUTHERLAND, J. The statute, (sess. 47, ch. 325, s. 3,) authorizes the circuit court to attach witnesses who have disobeyed a subpœna. I have known the power conferred by that statute to be exercised for the purpose of bringing in the witness to testify.

*Right of the district attorney to remove causes by certiorari.*

[*141]

*Maxwell.* There are other indictments pending at the oyer and terminer, like those before the court, involving the same questions, and requiring the attendance of the *same witnesses. I submit whether I shall give these the same direction by issuing writs of certiorari, for their removal to this court.

SAVAGE, Ch. J. You must take your own course on that subject. You have a right to remove the other causes or to try them where they are, as you shall think advisable.

The defendants who had prosecuted the certiorari, then appeared in court, and entered into recognizances; the form or amount of which was not questioned by the district attorney.(b)

He suggested that the sureties should justify

SAVAGE, Ch. Justice, said this would have been required as a matter of course, had it been demanded in season. *But the sureties had gone from the bar, before the motion was made.

[*142]

(b) It was in this form:

Be it remembered, that on the 31st day of May, A. D., 1827, Jacob Barker, of the city of New York, J. C. and T. F. also of said city, personally appeared in the supreme court of judicature of the people of the state of New York, before the justices thereof; and acknowledged themselves to owe to the people of the state of New York, that is to say, the said Jacob Barker the sum of $10,000; and the said J. C. and T. F. each the sum of $5,000, of good and lawful money of the state of New York, to be made and levied of their respective goods and chattels, lands and tenements, to the use of the people of the state of New York aforesaid, if the said Jacob Barker shall make default in the condition underwritten.

The conditon of the above recognizance is such, that if the above bounden Jacob Barker shall personally appear before the next circuit court to be holden in and for the city and county of New York, at the city hall of the city of New York, on the third Monday of June next, and from time to time thereafter during the continuance of the said circuit court, as said court shall direct; and also before the justices of the people of the state of New York of the supreme court of judicature of the same people, at the academy, in Utica, in the county of Oneida, on the first Monday of August next, and from time to time thereafter, and at such circuit court thereafter as the said court shall order and direct, to answer, and to do and receive what shall, by the said supreme court, be then and there required in, of and concerning a certain record of indictment remaining in said supreme court against him, the said Jacob Barker, who was indicted together with George W. Brown, Mark Spencer, Mathew L. Davis, Thomas Vermilyea, Joseph G. Swift, Henry Eckford and William P. Rathbone; and the said Jacob Barker shall not depart the said supreme court without leave, then the above recognizance to be void; otherwise to be and remain in full force and virtue.

Signed,      JACOB BARKER,<br>J. C.<br>T. F.

Taken and acknowledged in open court, the 1st day of June, 1827.

JAS. FARLIE, Clerk.

NEW YORK,    *Selden.*  They are the same sureties who were received
May, 1827.
───────    without objection, in the oyer and terminer.
The People
   v.
Vermilyea.

    *Maxwell* did not farther press his motion for a justifica-
tion; but he suggested that the defendants should now
plead to the indictment.

    *Selden.*  They pleaded in the court below. Their plea
stands on the record, which is removed; and upon which
the cause is to go down.

    SAVAGE, Ch. J.  I believe that is sufficient. Strictly,
there need not be a new plea.

    WOODWORTH, J.  The dispute seems to be upon a mat-
ter of mere form. Is there any objection to pleading *de
novo?*

    *Selden.*  Not in the least.
    He then pleaded not guilty, for all the defendants except
Barker, who pleaded for himself.

Other    de-    *Maxwell.*  Here are several other defendants in this in-
fendants, how
compelled  to dictment, who did not join in the certiorari; and who are
appear.       yet to be tried. The indictment is here as well in respect
to them, as those who have appeared and given sureties.
The defendants who did not join in the writ should also
appear, and enter into recognizance, and put in pleas.

    SAVAGE, Ch. J.  They are not here; and, therefore, can-
not now plead, or give sureties. If they will not volunta-
rily appear, you can bring them upon a *capias.*

How    the    *Maxwell* suggested a difficulty which might arise, under
bench are to
be   informed the present organization of the judiciary, as to the mode
what sentence of informing this court what sentence they should pass in
to give.      case the defendants are convicted. The circuits generally
[*143]      *not being holden by any member of the bench as formerly,
how will the court be able to estimate the measure of pun-
ishment?

*The Court* intimated that they must have not only the record and postea, but the circumstances in evidence must be laid before them by a case, or in some other way.