(109 App. Div. 111.)

PEOPLE v. GEORGER.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1905.)

1. CRIMINAL LAW—CHANGE OF VENUE—DUTY OF APPELLATE COURT.

The Appellate Court, on appeal from an order denying a motion to change the place of trial on the ground that accused cannot have a fair trial in the county in which the indictment is pending, is charged with the duty of determining from the record whether the application should have been granted; and in reaching a conclusion the decision below will be given great weight.

2. SAME—GROUNDS—LOCAL PREJUDICE—PROOF—SUFFICIENCY.

Where, on an application for a change of venue by one indicted for the larceny of the funds of a bank of which he was president, and for perjury in swearing to a false report to the banking department of the state, and for bringing about the fraudulent insolvency of the bank, it was shown that the community was practically a unit in concluding that accused was guilty, and that all classes in the community entertained toward him a feeling of hatred, the application should be granted.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, § 243.]

Appeal from Special Term, Erie County.

Eugene A. Georger was indicted, and he appeals from an order denying a motion for a change of the place of trial. Reversed.

On the 14th day of March, 1905, the grand jury of Erie county found nine indictments against the defendant, seven of which charged him with grand larceny, one with perjury, and the other with having participated in bringing about the alleged fraudulent insolvency of a moneyed corporation, in violation of subdivision 1 of section 603 of the Penal Code. All of the indictments relate to transactions had with the German Bank of the city of Buffalo, N. Y., or matters connected therewith. The motion or application for a change of the place of trial of the indictments referred to was made under subdivision 2 of section 344 of the Code of Criminal Procedure. That section provides, in substance, that any indictment may be removed before trial to a term of the Supreme Court held in another county, "on the ground that a fair and impartial trial could not be had in the county or city where the indictment is pending." Practically the only question presented by this appeal is whether the court at Special Term properly exercised its discretion in the premises.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

Moses Shire, for appellant.

Richard E. Coatsworth, Dist. Atty. (William S. Jackson, Asst. Dist. Atty., of counsel), for the People.

McLENNAN, P. J. It is elementary that the purpose of the statute referred to is to secure to a defendant a fair and impartial trial. It is equally well settled that a motion of this kind is addressed to the discretion of the justice at Special Term, and that ordinarily his decision will not be interfered with. It, however, is true that the Appellate Court is charged with the duty of determining from the record presented to it whether such application should or should not be granted. In reaching a conclusion, the decision of the judge at Special Term is entitled to great weight, but the fact that such a decision has been made by no means relieves the Appellate Court

from responsibility in the premises. The cases cited by respondent's counsel only indicate that as a rule the appellate courts have been satisfied with the manner in which the discretion of the court at Special Term has been exercised in cases of this character, and in no manner indicate that the decision of the court at Special Term should be regarded as binding upon the appellate tribunal, and such as to relieve it from the responsibility of a final determination in any particular case. A careful examination of the record presented in this case leads us to conclude that the defendant could not probably obtain a fair and impartial trial in the city of Buffalo, the county seat of Erie county.

The facts and circumstances contained in the record leading to such conclusion are too numerous to refer to in detail in an opinion. The indictments charge the defendant with grand larceny, in that he did feloniously appropriate to his own use funds belonging to the German Bank of Buffalo, he being the bailee, servant, agent, and trustee thereof. He is charged in such indictments with the crime formerly known as embezzlement, and also with larceny at common law. One of the indictments charges him with the crime of perjury, in that he, as president of the German Bank, did swear to a false report to the superintendent of banking of the banking department of the state of New York, and still another of the indictments charges the defendant with a misdemeanor, in that he participated in the fraud in the case of the fraudulent insolvency of said bank, within the provisions of subdivision 1 of section 603 of the Penal Code. It appears that all the indictments have reference to the alleged crimes or misconduct of the defendant in transactions had by him with, or relating to his management of, the German Bank of the city of Buffalo. That bank was organized under the Laws of the state of New York, was incorporated in 1879 with a capital stock of $100,000, divided into 100 shares of $1,000 each, and was located in the city of Buffalo, in the county of Erie. There was what is called a "run" upon the bank, and as a result, on the 5th day of December, 1904, the superintendent of banking of the state of New York took possession of it, and closed its doors. An action was immediately commenced by the Attorney General of the state for a dissolution of the bank, and for the appointment of a receiver, and it was discovered that a very large loss would be sustained by the stockholders and by the depositors and other creditors. The institution had formerly sustained a good reputation in the city of Buffalo and in the county of Erie, and the defendant had been for years regarded as its chief manager and controlling spirit, first as cashier, and from 1898 to 1904 as its president. Immediately previous to the collapse of the bank, it is claimed the defendant sold his stock to other parties, and resigned his office as president of the institution. The failure of the bank was alleged to be due to the mismanagement, fraudulent acts and practices of the defendant, for which alleged acts of misconduct and fraudulent practices the indictments in question were found. The public press of the city of Buffalo, almost without exception, proclaimed him guilty of the acts and delinquencies thus charged, and, as appears by the record, people of all

classes gave assent and emphasis to the opinions thus expressed in the public press. Without going into detail as to the character of the opinions expressed, all to the effect that the defendant was culpable and wholly responsible for the difficulties in which the bank was involved, it is sufficient to say that by the quotations from the public press contained in the record, from the opinions of parties interested, assembled to consider the situation, and from the expressions of citizens who met and casually discussed the matter, it would seem that the community was practically a unit in concluding that the defendant had been guilty of serious wrongdoing, and which resulted in or caused the failure of the bank. Apparently such was the conclusion of every class of citizens of the city of Buffalo. The working men, the merchants, the capitalists, bankers, all apparently with one voice, pronounced the defendant guilty of wrongdoing, and all apparently concluded, if we are to judge from the expressions contained in the record, that the failure of the bank was due to his criminality in the premises. Indeed the expressions of feeling on the part of all classes of citizens, only mere samples of which are given in the record, indicate that they believed, not only that the defendant was guilty of the offenses charged in the indictments, but also indicate that they entertained toward him an extreme feeling of hatred and aversion.

It is not within the province of this court to determine as to the guilt or innocence of the defendant, to determine whether or not the feelings of the citizens respecting him and in respect to his dealings with the defunct bank are justified, or otherwise. It is our duty to assume that the defendant is innocent of any and all crime until the contrary is proven by competent evidence, and upon this appeal we are concerned only with the proposition as to whether or not the jurors who would be drawn from Erie county would be in such frame of mind as to enable them to give full force and effect to the proposition that the defendant, like all others charged with the commission of crime, is presumed to be innocent until the contrary is established beyond a reasonable doubt, and in such frame of mind as would lead them to give the defendant the benefit of every reasonable doubt arising upon any proposition. From the record presented to us, representing, as we believe, a very accurate picture of the feelings and attitude of the people of the county of Erie toward the defendant, we are forced to the conclusion that such community has already as a whole adjudged the defendant guilty, and that jurors selected from such community would not constitute a tribunal which would determine the guilt or innocence of the defendant uninfluenced by passion or prejudice.

It is urged that it cannot be known that an impartial jury could not be obtained until attempt is made to secure the same. We may assume that any juror examined would intend to answer truthfully as to the state of his mind respecting the guilt or innocence of the defendant; but if the feeling against the defendant in Erie county is such as is indicated by the record, it is apparent that many men— men of character and integrity—would be unconsciously influenced by such feeling, and that such unconscious feeling would not neces-

sarily be disclosed by any preliminary examination which might be made as to their competency as jurors.

We deem it unnecessary to continue the discussion. It is sufficient to say that, upon the record presented to us, we are convinced that, if the defendant were placed upon trial in the county of Erie upon any of the indictments referred to, it is more than probable he would not have a fair and impartial trial, such as, under the Constitution and the laws of the state, he is entitled to.

It follows that the order appealed from should be reversed, and defendant's motion to change the place of trial of said indictments from the Supreme Court of the county of Erie to a term of the Supreme Court to be held in some other county of the state of New York should be granted, and the county in which such trial is to be had. should be determined after hearing counsel for the respective parties. All concur.

Order reversed, and motion granted; the county in which trial is to be had to be determined by this court. Counsel for parties may be heard upon that question on Friday, November 17th, at opening of court.