SUPREME COURT—APP. DIVISION—FOURTH DEP.,
July 12, 1906.

# THE PEOPLE *v.* WILLIAM B. JACKSON.

(114 App. Div. 697.)

(1). TRIAL—CHANGE OF PLACE OF—

The Supreme Court has general jurisdiction to entertain a motion for the change of place of trial of a criminal action on the ground that a fair trial cannot be had in the county where the venue is laid.

(2). SAME.

An order denying such motion is not an intermediate order in the action from which an appeal can be taken only after trial and judgment, but is of the nature of an order in an independent special proceeding from which a direct appeal may be taken to the Appellate Division.

(3). SAME.

Where several defendants, who were supervisors, are indicted individually for bribery and embezzlement of public moneys in connection with the building of an Armory upon the site of an old cemetery, and great public feeling adverse to them has been aroused in the locality by newspaper and popular humor, a proper case is presented for a change of place of trial on the ground that a fair trial cannot be had in the county where the venue is held.

(4). SAME.

That the place of trial of one of the defendants in the same crime has been changed, is a reason for changing it as to the others. KRUSE AND SPRING, JJ. *dissenting.*

APPEAL by the defendants, William B. Jackson and another, from an order of the Supreme Court, made at the Erie Special Term, bearing date the 11th day of May, 1906, and entered in the office of the clerk of the county of Erie.

*Willard H. Ticknor,* for the appellants.

*Daniel V. Murphy* and *Frank A. Abbott,* for the respondent.

NASH, J.:

Sixteen indictments have been found by the grand jury of the county of Erie charging the defendants with the crimes of grand larceny, first degree, in receiving stolen property, of receiving bribes, and of asking for, agreeing to receive and receiving bribes, some of which are against both defendants jointly, some of them against each of the defendants severally, and two against these defendants jointly with others, all growing out of the same subject-matter.

These defendants moved at Special Term in the county of Erie, on May 10, 1906, for an order changing the place of trial from the county of Erie to another county, and from the order denying the defendants' motion this appeal is taken.

On behalf of the People the defendants' right of appeal from the order is questioned, upon the ground that under the Code of Criminal Procedure this court has not jurisdiction to entertain the appeal.

Under the former practice a motion to change the venue of a criminal action was made in the Supreme Court upon the removal of the cause by certiorari. (*People* v. *Vermilyea,* 7 Cow. 108, 136, 139.) In that case opinions upon the motion to change the place of trial were delivered by SAVAGE, Ch. J., and WOODWORTH, J. The latter in his opinion said: "There is no doubt of our power, upon a proper case, to send a criminal cause down for trial to a county other than that in which the venue is laid. Crimes, however, are essentially local. Hence, the venue as such cannot be changed. The place of trial must be altered by suggestion, and on clear proof that the cause cannot be tried in the county where the offense is laid, with safety to the rights of the defendant."

SAVAGE, Ch. J.: "The counsel for three of the defendants move that the cause shall be carried down to the

Circuit for trial, instead of being remitted to the Oyer and Terminer; and that the venue be changed. * * * The course in criminal prosecutions, where a clear case is made out, is to order a suggestion upon the record that a fair and impartial trial cannot be had in the county where the offense is laid. A venire is then awarded to the sheriff of another county, and the cause tried there, the indictment remaining unaltered as to the venue."

In *People* v. *Webb* (1 Hill, 179), upon a motion of the district attorney to change the place of trial, it was said, per COWEN, J.: " This is a motion to change the venue in two indictments for libels upon Mr. Cooper, from the county of Otsego to some adjoining county. The motion is made on the part of the People, and is founded on the alleged fact that in consequence of a series of publications against the complainant, the public mind has become so much prejudiced against him in respect to the prosecutions that a fair and impartial trial cannot be had in Otsego. The Revised Statutes (2 R. S. 614 [2d ed.], § 1) impliedly authorize us to make such a change for special cause on an indictment coming into this court by certiorari."

In *People* v. *Bodine* (7 Hill, 147) the defendant was indicted and tried for the crime of murder in the county of Richmond, and after a protracted trial the jury were discharged by the court on the ground that they were unable to agree upon a verdict. The indictment was then removed into the Supreme Court by certiorari, and a motion was made to change the venue from the county of Richmond to the county of New York, upon the allegation that a fair and impartial trial could not be had in the former county. The opinion of the court was delivered by NELSON, Ch. J., denying the motion. An attempt was afterward made to impanel a jury in the county of Richmond, but without success, whereupon the district attorney moved to change the venue and the motion was granted.

In *People* v. *Baker* (3 Abb. Pr. 42) the place of trial was changed at Special Term on motion of the district attorney, the court holding that " a certiorari to remove a criminal action from the Oyer and Terminer to the Supreme Court may issue at the instance of the district attorney as well as on application on behalf of the defendant."

In *People* v. *Sammis* (3 Hun, 560) the General Term of the second department entertained an appeal from an order at Special Term denying the defendants' motion for a change of the place of trial.

In *People* v. *Long Island Railroad Co.* (16 How. Pr. 106) the Brooklyn General Term changed the place of trial upon motion of the defendants from the county of Kings to Westchester county.

The procedure, therefore, was wholly in the Supreme Court, which under its general jurisdiction and the practice of the court entertained the application for a change of venue both when originally made and upon appeal.

It is urged in behalf of the People that the order appealed from is an intermediate order within the meaning of the sections of the Code of Criminal Procedure regulating appeals, from which an appeal can only be taken after trial and judgment. (Code Crim. Proc. §§ 515, 517, 522.)

Section 515. " Writs of error and of certiorari in criminal actions and proceedings and special proceedings of a criminal nature, as they have heretofore existed, are abolished; and hereafter the only mode of reviewing a judgment or order in a criminal action or proceeding, or special proceeding of a criminal nature, is by appeal."

Section 517. " An appeal to the Supreme Court may be taken by the defendant from the judgment on a conviction after indictment, except that when the judgment is of death, the appeal must be taken direct to the court of appeals, and upon the appeal, any actual decision of the court in an intermediate

order or proceeding forming a part of the judgment-roll, as prescribed by section four hundred and eighty-five may be reviewed."

Section 522. "An appeal must be taken by the service of a notice in writing on the clerk with whom the judgment-roll is filed, stating that the appellant appeals from the judgment."

An order in a proceeding to remove an indictment from the court in which it is pending to the Supreme Court held in another county, on the ground that a fair and impartial trial cannot be had in the county where it is pending, is not one of the papers enumerated in section 485 of the Code of Criminal Procedure, and, therefore, it is not an intermediate order forming a part of the judgment roll within the meaning of said section 517.

The practice in a proceeding for the removal of the action before trial is regulated by chapter 8 of title 5 of part 4 of the Code of Criminal Procedure, section 343 of which provides: "All writs and other proceedings heretofore existing, for the removal, upon the application of the defendant, of criminal actions prosecuted by indictment, from one court to another before trial, are abolished."

Section 344.* "A criminal action, prosecuted by indictment, may at any time before trial, on the application of the defendant, be removed from the court in which it is pending, as provided in this chapter, in the following cases:

"1. From a county court or a city court, to a term of the Supreme Court held in the same county, for good cause shown.

"2. From the Supreme Court, or a county court or a city court, to a term of the Supreme Court, held in another county, on the ground that a fair and impartial trial can not be had in the county or city where the indictment is pending." ·

Section 346. "The application for the order of removal

---

* See Laws of 1895, chap. 880.—[REP.

must be made to the Supreme Court, at a special term in the district, upon notice of at least ten days to the district attorney of the county where the indictment is pending, with a copy of the affidavits or other papers on which the application is founded."

In *People* v. *McLaughlin, No.* 1 (2 App. Div. 408) the Appellate Division entertained an appeal from an order denying the defendant's motion to change the place of trial. The case is stated in the opinion of the court as follows: " The defendant was indicted for a felony, and his trial took place in the Court of Oyer and Terminer in the month of April, 1895. On the eleventh day of May the trial was brought to an end by a disagreement of the jury. The judge presiding at the term at which the trial had just been had, set down the case for another trial on the twentieth day of May, nine days after the end of the first trial. The defendant at once took steps to make a motion to change the place of trial upon the ground that an impartial trial could not be had in the county of New York. The papers upon that motion, which were very voluminous, were partially finished on the seventeenth day of May, and on that day a notice of motion was prepared, and upon that notice of motion and the affidavits an order was procured from a justice of this court staying the trial of the criminal action until the time fixed in the notice of motion for the hearing of the application to change the place of trial. These papers, which were regular in form, were served on the district attorney on the afternoon of Saturday, the eighteenth day of May. The trial of the action in Oyer and Terminer had been set down for ten o'clock on the next Monday. The motion to change the place of trial was noticed to be heard at the Special Term to be held on the third day of June, which was seventeen days after the date of the notice and fourteen days after the time when the case was set down for trial in Oyer and Terminer. On the afternoon of the day on which the motion papers were served the district

attorney, upon an affidavit made by him, procured from a justice of this court an order to show cause, returnable on Monday, May twentieth, at ten-thirty o'clock, why the argument of the motion which had been noticed by the defendant to be heard on the third of June, should not then and there proceed forthwith before the Special Term. This order to show cause was served about seven o'clock in the morning of Monday, May twentieth, and at the time prescribed in it both parties appeared before the Special Term; the People to bring on the motion mentioned in the order to show cause, and the defendant simply for the purpose of objecting to the hearing of the motion upon the ground that the court had no jurisdiction to require the defendant to make the motion at that time, and upon other grounds which need not now be considered. The court overruled the objections taken by the defendant, and required him to proceed forthwith with the motion to change the place of trial. This he declined to do, and thereupon the court entered an order denying the defendant's motion to change the place of trial and vacating the stay of the trial. From that order this appeal is taken."

The order denying the defendant's motion to change the place of trial was reversed, also the order vacating the stay the latter upon the ground that the order vacating the stay had the effect of limiting the time within which the defendant had the right to move for a change of venue.

In the meantime, the defendant having been tried and convicted and the judgment of conviction affirmed (*People* v. *McLaughlin, No.* 2, 2 App. Div. 419), an appeal was taken to the Court of Appeals (150 N. Y. 365), where the defendant's contention that upon the reversal of the order of the Special Term the Appellate Division should also have reversed or set aside the intermediate trial and proceedings which resulted in his conviction, was sustained. In the opinion of the court, per MARTIN, J., it is said: " The appellant had a right to apply for a removal of the action to another county before trial upon the

ground that a fair and impartial trial could not be had in the city and county of New York. The right to remove the place of trial from one county to another, where a fair and impartial trial cannot be had in the county where the indictment is pending, has long existed. It existed at common law, and was subsequently incorporated into the statutes of the State. The provisions of the Code of Criminal Procedure upon the subject have been evolved from previous legislation, and, so far as they extend, now contain the rule of law governing such an application.

" As they stood at the time of the trial, so far as material, they were as follows: * ' A criminal action prosecuted by indictment may, at any time before trial, on the application of the defendant, be removed from the court in which it is pending, as provided in this chapter, in the following cases: * * * 2. From a court of oyer and terminer or sessions, or a city court to the court of oyer and terminer of another county, on the ground that a fair and impartial trial cannot be had in the county or city where the indictment is pending.' (§ 344) If a former trial has been had, the indictment may be removed before a new trial. (§ 345.) ' The application for the order of removal must be made to the Supreme Court at a special term in the district, upon notice of at least ten days to the district attorney of the county where the indictment is pending, with a copy of the affidavits or other papers on which the application is founded.' (§ 346.) ' To enable the defendant to make the application, a judge of the Supreme Court may, in his discretion, upon good cause shown by affidavit, make an order staying the trial of the indictment until the application can be made and decided.' (§ 347.)

" That the right thus given is a substantial one and has always been regarded as of great importance to a defendant, is manifest not only from the time it has existed, but also from its para-

---

* See Laws of 1881, chap. 442, §§ 344-347.—[Rep.

mount necessity to fairly protect his just rights and interests. The right of every person accused of crime to have a fair and impartial trial before an unbiased court and an unprejudiced jury is a fundamental principle of criminal jurisprudence. For the protection of persons accused of crime, the law, as a safeguard against local prejudice, has benignly provided this remedy.

" Under the statute the defendant had an absolute right to apply to the Supreme Court for a removal of the action before trial, upon the ground relied upon. Of this he has been deprived. Having thus been deprived of a substantial right, and the district attorney having proceeded with the trial of the indictment which resulted in the defendant's conviction, in defiance of such right, we are unable to perceive any proper ground upon which the action of the Appellate Division can be sustained, so far as it failed to set aside the proceedings and trial, and thus accord to the defendant the benefit of this statutory remedy."

Upon the question of jurisdiction Mr. Justice RUMSEY, in his opinion at the Appellate Division, said (p. 411) : " It is apparent from these and the subsequent sections of the Code upon the subject, that by this proceeding the criminal action was not removed from the Court of Oyer and Terminer, but still remained pending therein, and the court was at liberty to proceed with the trial of the action in the ordinary course, unless that trial was stayed as provided by the section quoted above. The proceeding, therefore, to change the place of trial was not a proceeding in the criminal action, but it was a matter outside of that action brought to obtain relief which was no necessary part of the criminal action itself. It resembled more an application for a writ of prohibition or mandamus directed to an inferior court to direct the course of proceeding in that court in an action which was pending in it, but which did not draw to itself the particular action with regard to which the writ

was asked. The proceeding was one in the Supreme Court. It was a proceeding for the enforcement of what was claimed to be a right, and it was not a civil action, because a civil action is an ordinary proceeding instituted by a summons. * * * This one was within the definition of the Code of Civil Procedure a special proceeding. (Code Civ. Proc. §§ 3333, 3334.) It could only be commenced by the service of the affidavits and notice of motion. When those papers were served upon the People they were brought into court and the proceeding had an inception, and from that time the Supreme Court had jurisdiction of the proceeding, because the service of the notice of motion lay at its foundation, and was the mode prescribed by the statute for bringing the People into court upon the application for the relief sought."

The subsequent amendment of these sections of the Code of Criminal Procedure by chapter 880 of the Laws of 1895 to conform to the change of judicial procedure by which all actions and proceedings in the Courts of Oyer and Terminer were transferred to the Supreme Court did not work any change in the practice or proceeding to change the place of trial of criminal actions. It remains the same and is a proceeding in the Supreme Court governed by the general rules of practice of that court, including the right of appeal from an order of the Special Term affecting a substantial right.

The only case in which the question of jurisdiction to entertain the appeal has arisen since the amendment is that of *People* v. *Sarvis* (69 App. Div. 604). The district attorney urged that the order was not appealable to that court inasmuch as the appeal from a conviction for the crime for which the defendant was indicted, murder in the first degree, would be taken direct to the Court of Appeals, and on such appeal the order appealed from could be reviewed, and not otherwise. The court said: "We cannot agree to this conclusion. We are clearly of the opinion that an order of this character can be

reviewed by this court, and that it has the power, where the defendant has been indicted for the crime of murder, to change the trial from the county in which the indictment has been found to another county in the State, in order that a fair and impartial trial may be had before an unprejudiced jury, but there is nothing in the record before us from which it can fairly be said that such a trial cannot be had in the county of Orange."

Although the order denying the motion was affirmed, the opinion was that of the whole court, deliberately expressed.

Wherever the question has been up in a proceeding to change the place of trial, the authorities are to the effect that the order is appealable.

The cases relied upon in support of the contention of counsel for the respondent are not applicable.

In *People* v. *Trezza* (128 N. Y. 529, 8 N. Y. Crim. Rep. 291) the appeal was from an order denying a motion for a new trial on the ground of newly-discovered evidence, made after the affirmance of a judgment of conviction of the defendant for the crime of murder in the first degree. It was held that such an order is only reviewable in connection with and upon appeal from the judgment and when it is embodied in the judgment roll. In the case of *People* v. *Priori* (163 N. Y. 99, 15 N. Y. Crim. Rep. 194), it was held that an order denying a motion for a new trial upon the ground of newly-discovered evidence, made after a judgment of death and an appeal therefrom by the defendant and in time to include the proceedings in a case, is reviewable as an incident to the appeal. In that case the Court of Appeals entertained an appeal from an order of Special Term denying a motion for a resettlement of the case, holding that although there is no express statutory provision authorizing such review, the power to hear and determine the appeal necessarily implies the right to settle the preliminary practice so far as it is not fixed by statute.

In the case of *People ex rel. Hummel* v. *Trial Term* (184

N. Y. 30, 20 N. Y. Crim. Rep. *Ante.*) the grand jury of the Court of General Sessions of the Peace held in and for the county of New York had found two indictments against the relator, charging him with the crime of subornation of perjury. These indictments had been transferred to the criminal branch of the Supreme Court, which was held by Mr. Justice DAVY, before whom the district attorney contemplated the trial of the charges. Thereupon the defendant moved the court for an order quashing the indictments upon the ground that he had been compelled to testify against himself before the grand jury. This motion was denied, and then the relator procured an alternative writ prohibiting the justice from proceeding with the trial until the further order of the Appellate Division. Subsequently the matter was brought to a hearing before that court, resulting in an order denying the relator's application for an absolute writ of prohibition as a matter of law, and not in the exercise of discretion, and the quashing of the alternative writ. The Court of Appeals in affirming the order of the Appellate Division, held that, although not specifically mentioned as one of the papers constituting the judgment roll as provided by section 485 of the Code of Criminal Procedure, an order denying a motion to dismiss an indictment is embraced in the general provisions of the section, and may be included in and form part of the judgment roll; that the defendant, having a complete remedy by appeal from a judgment of conviction, was not entitled to a writ prohibiting the judge from further proceeding with the trial.

In *People* v. *Martin, No.* 1 (99 App. Div. 372) the appeal was from an order of the Court of General Sessions of the Peace in and for the county of New York denying defendants' motion to dismiss an indictment for lack of prosecution. The court, in expressing the opinion that the order was not appealable, put the case in that class in which appeals are expressly allowed by the Code of Criminal Procedure from a judgment of conviction.

The distinction between all of the cases cited in behalf of the respondent's contention and the case at bar is that in a proceeding to change the place of trial the right of review is inherent in the court in the exercise of its general jurisdiction.

The defendants are charged with wrongdoing in connection with the Sixty-fifth Regiment Armory, erected upon the site of an old cemetery, in the city of Buffalo, from which the remains of many thousands of bodies had to be removed in preparing the site for the armory. As supervisors, members of the board of supervisors of the county of Erie, the defendants are charged individually and jointly with the crime of grand larceny, in feloniously taking and appropriating individually and jointly with others, large sums of money the property of the county of Erie, and are individually charged with taking bribes for their votes as supervisors in favor of the adoption of resolutions relating to the expenditure of moneys for the removal of bodies from said cemetery, and reinterment elsewhere, and the removing and resetting of monuments, stones and slabs in said cemetery. That the whole amount of money charged to have been taken in the grand larceny indictments is $52,072, and the amount alleged to have been paid as bribe money $27,404.

We are not required to determine on this appeal whether or not the learned justice at Special Term properly exercised his discretion in denying defendant's motion for a change of the place of trial, for the reason that the affidavits on the motion of Neff, made part of the record by stipulation, were not, it seems, considered by the court at Special Term in disposing of the motion.

The learned justice in his opinion said: " This motion differs radically from that made in *The People* v. *John W. Neff,* where upwards of one hundred and thirty affidavits were presented, showing a strong sentiment and hostile feeling existing against him in this community, and in all the towns of this county."

The same strong sentiment and hostile feelings existed in the

towns of the county and in the city of Buffalo against these defendants as against Neff. The criminal charges against Neff and these defendants individually grew out of the same subject-matter. The charges of graft against these defendants were made the subject of comment and illustration in the daily press for months beginning in November last, and continuing through the months of January, February, March and April, during which period the newspapers vied with each other in displaying headlines and gruesome details, charging the defendants and other county officials with graft in the purchase of the site and expense of removal of bodies from said cemetery. Exemplifications of headlines in large type:

" ARMORY GRAFTERS TO BE PROSECUTED. EVIDENCE of Graft Piling up in Armory Site. LOOT OF THE ROGUES. $43,000 SAYS STURM (County Auditor). Money Filched in Cemetery Deal. Sturm's Report Shows the Deal up. Officials Who signed the Warrants for Conover's Thousands. Gibson, Neff and Others. Discrepancy of $35,000 in One Place. County is Robbed of About $55,000. Startling Disclosures Relative to Buying the Old North Street Cemetery Property as a Site for the 65th Regiment Armory. Are Buried in Trenches the Contract Violated. At Least 168 Bodies were identified that should have had decent Burial—A Disgrace to Humanity. Black for Conover; Ghoulish Work Done, His Own Men Swear. Gave Orders to Count a Few Bones as a Body; skull bones carried around in pockets and supplied on demand. Cady Swears He saw Some Bodies Divided. Grave Workers Say Orders Were to Make as Many Bodies as They Could. (Cartoon): Vulturers of the Cemetery Deal. Bones of Bodies Thrown into Bix Boxes, then Separated. Mixed and Buried in Small Boxes. Sometimes One Bone Representing Whole Corpse. GIBSON and JACKSON ARRAIGNED: Stand to Answer for Their Share in the North Street Cemetery Loot. Are under Indictment. (Cartoon): Procession of

prisoners in charge of officers. Officers leading with indictment toward an open door; guard in front. Auburn Prison over the door. (Legend): To the graveyard of the ghouls. Condemned by the Living and the Dead.

"Buffalo Courier (Sunday Morning, April 1st, 1906. This Edition of the Courier goes into over 90,000 homes, thus assuring at least 350,000 readers). Courier Exposed Thieves and Grafters in 1900; Warned Gang that Day of Reckoning would come. Day by Day Ghouls Who Fattened on the Dead were Held up to Shame. What the Courier said when Supervisors put through the Armory Site Deal: (The Buffalo Courier, Wednesday, May 2nd, 1900). Supervisors Ignoring Honor and Duty Bind Erie County to Most Expensive and Disgraceful Deal in Unblushing Haste. Board Commits Itself to $1,000,-000 Armory Site Deal. In Shameful Defiance of the Taxpayers' Rights. Day will Go Down in County Legislative Annals as the Blackest Blot Upon the Pages of Official Archives."

The affidavits show that there were buried in said cemetery at least 8,000 bodies of persons who have relatives, descedants or friends now residing in the county of Erie, and that by reason of the widespread sentimental interest of a very large number of persons in said cemetery, and the removal of said bodies, and by reason of the widely-circulated newspaper articles, public opinion in the community has become especially inflamed toward all of the persons indicted in connection with said matter; that there has been a universal expression of opinion among all classes of people antagonistic to all persons charged with complicity in the crimes said to have been committed in connection with the subject-matter of the indictments against the defendants; that the prejudice created against all persons charged with the commission of crimes in connection with the acquiring of the site for said armory is deep rooted and pervades the entire city of Buffalo and county of Erie; that

the action of the members of the board of supervisors and other county officials in connection with said matter has been the subject of investigation by at least four grand juries of the county of Erie; that nearly every member of the board of supervisors during the years 1900 and 1901 has been called before said grand juries, and great publicity has been given by the newspapers of the city of Buffalo to the fact that said supervisors have been called and examined as witnesses before said grand juries; that by reason of said examinations of said supervisors and by reason of such publicity the attention of almost every resident of the city and county has been attracted towards said investigations; that since such charges have been publicly made and said indictments found against the defendants and other officials, the subject thereof has been the matter of public conversation in the hotel lobbies, street cars, upon the streets and public places, and in the various clubs of the city of Buffalo, and in the hotels, shops, stores and public places in the several towns of the county of Erie, and expressions of belief in the guilt of the person indicted are very general throughout the city and county.

In *People* v. *Georger* (109 App. Div. 111) where the defendant was charged with grand larceny and perjury in wrecking a bank, the newspapers of the city of Buffalo almost without exception proclaimed him guilty of the acts and delinquencies thus charged. It appearing from the record that people of all classes gave assent to the opinions expressed in the public press, it was held sufficient to change the venue. There the failure of the bank affected pecuniarily a large number of depositors. Here the entire body of taxpayers are pecuniarily affected. But more than that, the relatives and friends of more than 8,000 persons buried in said cemetery, whose bodies are said to have been removed in the manner indicated as above, feel themselves outraged, and justly so. These exposures must necessarily have created the deep feeling of antagonism felt generally among all classes of people, as stated in the moving affidavits, sufficient

to warrant the belief expressed that a fair and impartial trial of the defendants cannot be had in the county where the indictments are pending, and for that reason the order denying defendants' motion for a change of the place of trial to another county should be reversed.

Another reason exists in the fact that the place of trial of Neff, jointly indicted with these defendants, has been changed.

In Colby's Criminal Law (Vol. 1, p. 324) it is said: " Where the indictment is against several persons, and enough is shown on the part of the prosecution to make a change of the place of trial proper as to one defendant, the change will be made as to all the defendants, although it is a case in which every defendant is entitled to a separate trial."

The order appealed from should be reversed, and the motion to change the place of trial of the indictments against the defendants from the county of Erie to a term of the Supreme Court to be held in another county, should be granted, the county to be the same as that to which the indictments against Neff are removed.

All concurred, except SPRING and KRUSE, JJ., who dissented in an opinion by KRUSE, J.

KRUSE, J. (dissenting) :

At the outset the district attorney challenges the right of the defendants to appeal from the order sought to be reviewed, and moves to dismiss the appeal upon the ground that the order is not appealable.

We approach the consideration of this question well aware that the Appellate Division of this court in the first department has held that an independent appeal will lie by a defendant from such an order (*People* v. *Sarvis,* 69 App. Div. 604, and we ourselves have entertained like appeals. (*People* v. *Georger,* 109 App. Div. 111; *People* v. *Bartels,* 110 id. 922; 96 N. Y.

Supp. 1139.)   It should, however, be said that in the *Georger*
case the defendant's right to appeal was not questioned, and in
the *Bartels* case, while the question was raised, the conclusion
was reached that the order was right upon the merits and was
affirmed.   If we were agreed that the order appealed from was
right, we might again affirm the order, leaving the question of
a defendant's right to appeal for the Court of Appeals, where it
must ultimately be determined, but there is a division among
us in that respect.   We would content ourselves with following
the decision in the *Sarvis* case and denying the motion to dismiss
the appeal were it not for the more recent decisions, to which we
will call attention presently, which we think require us to ex-
amine the question anew.

Whatever may have been the former practice of removing the
trial of indictments from one court to another, or from one
county to another, the practice is now plain and simple.   The
Code of Criminal Procedure abolishes all writs and other pro-
ceedings for the removal of criminal actions prosecuted by in-
dictment and substitutes therefor a direct application to the
Supreme Court at Special Term, making provision for the
staying of the trial until the application can be heard and de-
cided.   (Code Crim. Proc. §§ 343-347.)   It likewise abolishes
writs of error and certiorari in criminal actions, and provides
that the only mode of reviewing a judgment or order in a crimi-
nal action or proceeding or special proceeding of a criminal
nature is by appeal.   (Id. § 515.)   It also provides that an ap-
peal may be taken by the defendant from the judgment of con-
viction after indictment, and upon the appeal any actual de-
cision of the court in any intermediate order or proceeding
forming a part of the judgment roll, as prescribed by section
485, may be reviewed.   (Id. § 517.)

It will thus be seen that the only review of an intermediate
order in an appellate court is by an appeal from the judgment of
conviction, and only such intermediate orders are reviewable

upon an appeal as form a part of the judgment roll, unless there is some other provision of law allowing an appeal.

Section 485 of the Code of Criminal Procedure prescribes what papers shall constitute the judgment roll, and are specified in the following subdivisions:

" 1.   A copy of the minutes of a challenge interposed by the defendant to a grand juror, and the proceedings and decision thereon;

" 2.   The indictment and a copy of the minutes of the plea or demurrer;

" 3.   A copy of the minutes of a challenge which may have been interposed to the panel of the trial jury, or to a juror who participated in the verdict, and the proceedings and decision thereon;

" 4.   A copy of the minutes of the trial;

" 5.   A copy of the minutes of the judgment;

" 6.   A copy of the minutes of any proceedings upon a motion either for a new trial or in arrest of judgment;

" 7.   The case, if there be one."

The 8th subdivision refers to capital cases, and has no application to the questions now being considered. While an order to change the place of trial is not specifically named, it would seem to be included as a part of the copy of the minutes and the case.

In the case of *People ex rel. Hummel* v. *Trial Term* (184 N. Y. 30), recently decided in the Court of Appeals, it was held that an order denying a motion to quash an indictment upon the ground that the defendant had been compelled to testify against himself before the grand jury is an intermediate order and becomes a part of the judgment roll although not specifically named therein, and reviewable upon an appeal from a judgment of conviction, and that, therefore, a writ of prohibition was not a proper remedy for the review of such an order.   We think it equally clear that an order refusing to

remove the trial of the indictment likewise becomes a part of the judgment roll.

In the *Bartels* case an appeal was taken to the Court of Appeals by the defendant from the order of this court affirming the order of the Special Term refusing to change the place of trial, and a motion was made in the Court of Appeals by the district attorney to dismiss the appeal to that court, which was granted. (*People* v. *Bartels,* 184 N. Y. 570.) The grounds of the decision in that court do not appear. It may well be that it was upon the ground that the order was discretionary and not appealable to that court, although an examination of the briefs indicates that the sole ground upon which the district attorney relied was that the order of the Special Term was not appealable.

It is contended, however, that this order is not such an intermediate order as is reviewable upon an appeal from the judgment. If that be true, then we are of the opinion that the order is not reviewable upon appeal at all. We know of no authority, and none is called to our attention, which authorizes an independent appeal from an order of this character, but it is said that the right of review is inherent in the Supreme Court. The right of appeal in a criminal case is regulated by statute, and appellate courts have repeatedly refused to entertain appeals by a defendant from orders much more serious in their consequences than an order such as is sought to be reviewed upon this appeal.

In *People* v. *Rutherford* (47 App. Div. 209), which was an appeal from an order refusing to quash an indictment, it is said: " There is no authority for such an appeal. The contention of the appellant that the court has an inherent right to entertain it cannot be entertained. No person has a constitutional right to appeal, and no court has an inherent right to entertain an appeal. The right, if it exists, and in all cases where it does exist, is simply the continuance of an existing practice by the

Constitution, subject to the legislative right to curtail or abolish it, or it must be founded in some statute.

" The Code of Criminal Procedure (§ 517) provides in what cases an appeal may be taken and what matter may be reviewed on appeal, and that must be taken as exclusive of all other form of appeal or matter to be reviewed. (*People* v. *Petrea*, 30 Hun, 102; affd. in 92 N. Y. 129.) "

And as late as December, 1904, upon an appeal from an order refusing to dismiss an indictment for want of prosecution, the Appellate Division of this court in the first department held that such an appeal would not lie (*People* v. *Martin, No.* 1, 99 App. Div. 372), Mr. Justice PATTERSON, speaking for the entire court, saying: " Appeals in criminal cases may be taken only where expressly allowed by statute, and the only appeal allowed by the Code of Criminal Procedure is from a judgment of conviction, on which appeal an intermediate order or proceeding forming part of the judgment roll may be reviewed. It may not be necessary, therefore, to consider whether or not the court below erred in denying the application; but even if the order were appealable, then it is plain that on the merits the application was properly denied."

In *People* v. *Trezza* (128 N. Y. 529, 8 N. Y. Crim. Rep. 291) the Court of Appeals held that an appeal from an order denying a motion for a new trial after final affirmance of the judgment of conviction would not lie, Judge ANDREWS saying: " It will be observed that the section only authorizes a review of intermediate orders and proceedings in connection with an appeal from the judgment, and when they are embodied in the judgment roll. There is no statute provision authorizing an appeal from an order denying a new trial, except as incident to an appeal from the judgment. It is said that the Legislature could not have intended to permit an appeal from such an order in that case, and to deny it where the application for a new trial is made after final judgment of affirmance and denied

when it would be too late to make the proceedings a part of the judgment roll. The Legislature seemed to assume that such proceedings would in all cases be taken before an appeal from the judgment. It may be that the failure to provide for an appeal in such a case as this was *casus omissus*. But the courts must be guided by the law as it is, and cannot give an appeal where none is given by the statute, and there is no statute authorizing an appeal from an order denying a new trial made after the roll is made up and the final affirmance of the judgment."

And again in a later case in the same court (*People* v. *Priori*, 163 N. Y. 99, 106, 15 N. Y. Crim. Rep. 194), where it was held that an order was reviewable in connection with the appeal from the judgment of conviction, Judge VANN very clearly and precisely defines an intermediate order in a criminal case, and when and how reviewable on appeal. He says: " An intermediate order, within the meaning of section 517, is not confined to orders made between the finding of the indictment and the preparation of the judgment roll in the first instance. The word ' intermediate ' as thus used means between the finding of the indictment and the completion of the judgment roll by the attachment. of the case thereto whenever it is filed. As a judgment roll need not be made up at all unless a notice of appeal is served, it is apparent that the object of preparing the roll is to make a record to present to the appellate court. (§ 485.) The judgment is entered upon the record kept by the clerk, and this is sufficient for its enforcement and for all purposes, unless an appeal is taken. Hence, if all the papers which the statute says shall be a part of the judgment roll are not on file when it is first made up, they become a part of it when filed, and the word ' intermediate ' is limited only in this way.

" A motion for a new trial upon newly-discovered evidence may now be made in a capital case at any time before execution, although formerly it was restricted to any time before judg-

ment. (L. 1887, ch. 534, § 466.*) Unless it is made and decided in time to include the proceedings in the case, the order denying the motion cannot be reviewed. The right is lost the same as many other rights in legal proceedings are lost, by delay."

The rule is thus stated in the Cyclopedia of Law and Procedure (12 Cyc. 798): " At common law a writ of error could never be obtained before judgment, but was granted only to review a final determination of a cause; and this procedure has been generally followed in the States of the United States, by the statutes providing for review. It therefore follows that a writ of error or an appeal will not usually lie, in the absence of a permissive statute, from an interlocutory judgment or order, unless perhaps from an interlocutory judgment or order deciding against defendant on a point which if it had been decided in favor of defendant would have acquitted him.

" As the granting of a change of venue is usually discretionary with the trial court, its decision with regard thereto is not ordinarily reviewable upon appeal, and when reviewable the appeal must be taken, not from the refusal to change the place of trial, but from the final judgment."

Such appeals, if entertained in advance of the judgment, afford means for putting off and delaying the trial, and serve no good purpose, for the rights of the defendant can be fully protected on an appeal from the judgment. A defendant has a right to a speedy trial, and whether he wishes it or not it is the duty of the prosecuting officer to bring him to trial with all due diligence and dispatch. A person wrongfully accused is entitled to be freed from suspicion and his innocence proclaimed at the earliest possible moment; and it is likewise important that the guilty should be speedily punished. Punishment for crime to be efficacious should be swift and certain, otherwise much of

---

* See Code Crim. Proc. (Laws of 1881, chap. 442), § 466, as amd. by Laws of 1882, chap. 65, and Laws of 1887, chap. 534.—[REP.

24

its deterrent effect upon the criminally inclined is lost. We think it clear from the entire scope of the Code of Criminal Procedure, which regulates the practice in criminal proceedings, that the Legislature did not intend to recede from the former practice in that regard and permit appeals from orders arising in the course of the proceeding antecedent to the trial, except a review upon an appeal from the judgment, and then only such as are specifically named or come within the spirit of the provision of the statute allowing the appeal.

2. But, speaking for myself, I am not persuaded that the discretion of the Special Term was not properly expressed in denying the motion for the removal of the trial of these indictments. Such applications ought not to be granted except upon a clear and convincing state of facts showing that the accused will not be able to obtain a fair and impartial trial in the county in which the crime is charged to have been committed. Formerly it was quite unusual to make such an application until an attempt had been made to secure a jury in the county where the indictment was pending. As late as the *Sharp* case in 1886 (*People* v. *Sharp*, 5 N. Y. Cr. Rep. 155, 159), where it was claimed that the aldermen of the city of New York had been bribed by Sharp in connection with the granting of the street surface railroad franchise, which excited much comment not only in the city of New York but elsewhere, upon a motion to remove the trial from the county, which was denied, the late Mr. Justice Barrett made this statement: " It may not be necessary to require the experiment of a trial before granting a removal, but it has been very rarely accorded without the preliminary effort to secure a fair and impartial jury. Especially is this desirable in a large city like New York, where the selection is so much greater and more varied than in other and small localities."

I do not mean to assert that such applications may not properly be made in advance of such an attempt to secure a jury in

the county where the indictment is pending. The Code of Criminal Procedure (§§ 344, 345) expressly provides that it may so be done, and the Court of Appeals, in a trenchant opinion by Judge MARTIN, has given cogent reasons for entertaining such application in advance of the trial (*People* v. *McLaughlin,* 150 N. Y. 365, 378-381, 11 N. Y. Crim. Rep. 523), but this practice is alluded to to show how convincing a case is required to be made and how sparingly motions of this character have been granted. It is true, as is stated by Judge MARTIN: " That jurors are sometimes prejudiced, and courts may be unconsciously biased to the injury of one of the parties, must be admitted. Prejudice is often an insuperable barrier to the fair and impartial administration of the law. Its influence is subtle, insidious and often unconsciously warps the judgment and blinds the intelligence of those surrounded by its atmosphere. But its presence can usually be discovered only from the circumstances and conditions which produce it." And that case is a good illustration of what has been said. It there appeared that one trial had been had and the jury disagreed. It required three weeks to obtain the jury; its deliberations were attended with unusual excitement and passion; those for acquittal were threatened with imprisonment by their fellows, and after their discharge their intelligence, honesty and motives were assailed in public meetings and by the clergy, the public press joining in the attack upon such jurors and prospective jurors who should so vote upon a subsequent trial. These facts, and many others, as Judge MARTIN says, were undenied. I do not intend to be understood as saying that every case for a removal should require facts as strong as these, but it should be established with reasonable certainty that the defendants will probably be unable to obtain a fair and impartial trial, and that should be shown by facts and circumstances which naturally and logically lead to that conclusion.

I have gone over the voluminous papers used upon this mo-

tion, consisting of newspaper clippings and affidavits of persons giving their opinion, based largely upon what they have heard, much of it idle talk and extravagant statements. It is true that the matter has excited severe comment and indignant protest as shown by the papers, but so far as these defendants are concerned it does not appear that there is a general feeling in the county of personal ill-will against them, nor such general prejudice against them personally as proves the assertion that they will be unable to have a fair trial there. It was urged with great earnestness that they are men of irreproachable character, have always stood high in the community where they live, and we know of nothing to the contrary; that they are innocent of these crimes and so the law regards them. Conceding all this, how can it be said that they will not be able to obtain a fair and impartial trial in the county in which they live and are known? I cannot bring myself to the conclusion that in this large county, having a population of several hundred thousand people, where jurors are selected by competent officers with care and due regard to their qualifications, a jury of fair-minded and reasonable men cannot be obtained who will determine the questions submitted to them upon the evidence and upon the evidence alone. However, upon the first ground alone I think the decision must be adverse to the defendants.

The appeal should be dismissed.

SPRING, J., concurred.

Order reversed, motion granted and place of trial changed to Wyoming county.