The People of the State of New York, Plaintiff, *v.* Leo J. Mleczko, Defendant.

Supreme Court, Special Term, Chautauqua County, November 26, 1948.

*William B. Mahoney* for defendant.

*Edwin G. O'Connor, District Attorney,* for plaintiff.

Hagerty, J. This *cause celebre* of Chatauqua County has undoubtedly, since the discovery of the victim of a brutal assault on March 10, 1946, in a railroad signal tower, and her subsequent death a short time thereafter, received more attention from the press, the radio and national magazines publishing

so-called detective stories, better described as tales of horrors, than any case in the history of that county. Ghastly details, including pictures of a blood-stained broom, have been disseminated through various media of publication throughout Western New York.

The defendant's picture, the contents of his purported confession and the claim that the victim on her deathbed had identified him as her assailant are all matters of common knowledge.

In one instance a society adopted resolutions, which were published, calling on the public authorities to do their duty. This was after the defendant was arrested and accused of the crime. Police claimed feeling against the defendant was running high, according to the press.

The fact that this defendant was once adjudged guilty under the indictment accusing him of murder in the first degree as the perpetrator of the heinous crime is a matter of public record and has been widely published by the press and the radio.

This conviction having been set aside and a new trial ordered (272 App. Div. 1099, revd. 298 N. Y. 153), the question now before this court is whether the defendant should be retried in Chautauqua County.

To find the correct answer to this question, it is the opinion of this court that great weight must be given to what was revealed by examination of prospective jurors for the first trial of the defendant in Chautauqua County. The record discloses that a considerable number of talesmen admitted that they were themselves convinced that they could not make fair and impartial jurors because of their settled opinions based upon what they had heard and read about the crime. The trial court excused these talesmen. In addition, the defendant used up 29 of the 30 peremptory challenges allowed him by law. These facts are significant when, it must be remembered, another jury must be secured for the next trial of the defendant and that jury must be ready and willing wholeheartedly to accord the accused the presumption that he is innocent (Code Crim. Pro., § 389).

It must be recalled that since these talesmen were examined for the first trial, the defendant was found guilty of the crime and sentenced to life imprisonment. Publication of this fact, of course, has supplemented whatever was in the minds of prospective jurors in Chautauqua County before the first trial.

It seems to this court that the high sense of fairness and impartiality of the people of the community in which this hor-

rible crime was committed can only be satisfied by knowledge that the defendant in this case will be tried in an atmosphere untainted by any possible prejudice, as the law of the State of New York requires. The result of another trial should not be vulnerable to an attack based upon unfairness and partiality.

In respect to the prospective jurors of Chautauqua County, I feel much the same way as Justice STRONG did when, in his opinion in the case of *People* v. *Baker* (3 Abb. Prac. 42, 56) he said: '' It can scarcely be necessary for me to say that I do not intend to impeach, in the slightest degree, the general character of New York jurors. Their respectability and their disposition to do right are not doubted, but they, like those selected from the rural districts, may be influenced in weighing the evidence and adopting their conclusions, by the public sentiment when that has been strongly formed and become generally known.''

Decisions of other courts on applications for change of venue are indicative of the fact that such a substantial right of persons accused of crime has been jealously guarded by the courts and that changes of venue have been ordered on showings much less persuasive than the showing made in the instant case.

The highest court of this State has spoken in strong terms concerning the right of an accused to a change of venue. In the case of *People* v. *McLaughlin* (150 N. Y. 365, 375–376) the court said: '' That the right thus given is a substantial one and has always been regarded as of great importance to a defendant, is manifest not only from the time it has existed, but also from its paramount necessity to fairly protect his just rights and interests. The right of every person accused of crime to have a fair and impartial trial before an unbiased court and an unprejudiced jury, is a fundamental principle of criminal jurisprudence. For the protection of persons accused of crime, the law, as a safeguard against local prejudice, has benignly provided this remedy.''

Again at page 379–380: '' That jurors are sometimes prejudiced, and courts may be unconsciously biased to the injury of one of the parties, must be admitted. Prejudice is often an insuperable barrier to the fair and impartial administration of the law. Its influence is subtle, insidious and often unconsciously warps the judgment and blinds the intelligence of those surrounded by its atmosphere. But its presence can usually be discovered only from the circumstances and conditions which produce it. In discussing this question in another case it was said: ' But there cannot well be any serious

misapprehension as to the existence of facts (showing prejudice against the defendant), especially where they are of a public nature. The principal question is as to the inferences to be drawn from them. It (the trial) is the very thing which the law seeks to avoid, when it is seen that the party *may*, and probably will be drawn into a trial by a jury, who, under an influence of which they may themselves be hardly conscious — an influence which, perhaps, no human sagacity can detect — may pronounce a verdict against him, and conclude his rights forever.' ''

(*People* v. *Jackson,* 114 App. Div. 697; *People* v. *Georger,* 109 App. Div. 111; *People* v. *Frankel,* 149 Misc. 195; *People* v. *Lucas,* 131 Misc. 664; *People* v. *Williams,* 106 Misc. 65.)

A fair and impartial trial of this defendant can best be assured by a change of venue.

Motion granted. Change of venue to Monroe County ordered.